THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, *v.*
JOSEPH SUNDAY, Defendant-Appellee.

Second District   No. 81—802

Opinion filed October 18, 1982.

Fred L. Foreman, State's Attorney, of Waukegan (Phyllis J. Perko, of State's Attorneys Appellate Service Commission, of counsel), for the People.

Steven B. Lunardi, of Lunardi, Roux & Svehla, of Waukegan, for appellee.

JUSTICE REINHARD delivered the opinion of the court:

This is an interlocutory appeal taken by the State pursuant to Supreme Court Rule 604(a) (85 Ill. 2d R. 604(a)) from a pretrial order granting, in part, defendant's motion to quash a search warrant and suppress evidence seized thereunder. The only issue before us on appeal is whether the trial court erred when it found the search warrant was improperly executed.

The defendant, Joseph Sunday, was charged in a three-count information with unlawful possession of more than 500 grams of a substance containing cannabis (Ill. Rev. Stat. 1979, ch. 56½, par. 704(e)), unlawful possession with intent to deliver more than 500 grams of a substance containing cannabis (Ill. Rev. Stat. 1979, ch. 56½, par. 705(e)), and unlawful possession of a firearm without having a firearm owner's identification card (Ill. Rev. Stat. 1979, ch. 38, par. 83—2). On June 4, 1981, defendant filed a motion to quash search warrant and to

suppress evidence illegally seized which essentially alleged there was no probable cause for the issuance of the search warrant and the search warrant was insufficient on its face. On September 10, 1981, defendant filed a second motion to quash search warrant and to suppress evidence illegally seized together with three affidavits which alleged improper execution of the search warrant and intentional misrepresentations in the complaint for search warrant. An evidentiary hearing was held on these motions on September 18, 1981, at which the following testimony relevant to the issue before us on appeal was adduced.

At 1:40 a.m. on January 17, 1981, a warrant was issued, based on the complaint for search warrant of Officer Robert Smith, a police officer of the Chicago Police Department assigned to the narcotics section of the organized crime division, commanding the search of both the person of the defendant, Joseph Sunday, and his residence, and to seize any marijuana and narcotics discovered as a result of its execution. At approximately 3:30 or 4 a.m. that same day Officer Smith and four other officers went to the defendant's residence, located at 26140 W. Park View in Antioch, to execute the warrant. At that time the defendant, his common-law wife, Maxine Gambony, and her 12-year-old daughter, Kimberly Gambony, were asleep in the home which they rented. According to Maxine Gambony, one of the officers, who was in uniform and was holding a gun at his side, rang the doorbell and informed her, when she opened the door, that someone had just broken into the van which was located in front of the residence and perhaps had stolen something from it. The officer told her to get the man of the house and have him come outside to determine whether the purported thief had stolen anything from the vehicle. After she relayed the message to the defendant, he went to the front door, where he encountered an officer, who had his pistol drawn at his side. The officer informed him that an individual had broken into the van and asked the defendant to accompany him to the vehicle.

Maxine Gambony further stated that after the defendant spoke with the officer, the defendant got dressed, while the officer remained outside by the door. After the defendant departed the residence, she closed the door, without locking it, awakened her daughter, and looked out the window but was unable to see anything. The door remained closed for about five minutes before it was reopened. After the five-minute hiatus, three officers, two of whom were in uniform, walked into her home without knocking and told her to get her daughter and sit on the couch. She did not recall whether they had their weapons drawn or whether they told her anything about a

search warrant. However, on cross-examination, she admitted that it was possible that they did mention the search warrant.

The defendant testified that as he was walking toward the van, the officer who was accompanying him twisted his arm, threw him against the van, spread his legs, and searched him. When he arrived at the van, the defendant noticed that Officer Robert Smith was standing against the vehicle with his arms and legs spread. Another officer had a gun drawn. The defendant also observed three or four other individuals at the van, two of whom were not dressed in uniform. After they searched him, the officers grabbed each of the defendant's arms and brought him into the house. Upon arriving there, the defendant noticed that a couple of officers were inside the residence but stated that he had not seen them enter the house. According to the defendant, he was not advised at any time—not at the door, not outside by the van, and not in the house after the search—that the officers had a search warrant for him or his house. During cross-examination, however, the defendant acknowledged that, given the fact that he was still sleepy and not fully aware of what was transpiring during the early morning incident, it was possible that the officers had told him that they had a warrant to search the house. He also related that the officers were "right with" him when the officers entered the house; that when they entered the residence after having been outside, the door was ajar; and that the officers just pushed it open and walked in.

Officer Robert Smith testified that when the two uniformed officers went to the defendant's house to tell him that someone had been caught breaking into the van, he (Smith) remained outside with his back toward the house and his hands and feet on the van in a spread-eagle position, because he was supposed to be a prisoner (apparently representing the person whom the police allegedly caught breaking into the van). Although he had his back to the house which was about 20 to 25 feet away, the officer occasionally looked over his shoulder. On those occasions he noticed that the officer at the door did not enter the residence but rather waited outside; that the officer did not have his gun drawn at the door; and that the officer did not draw his weapon during the walk to the van, at least not during the first one-third of the distance, which was the only part of the journey the witness observed.

According to Smith, when the defendant was approximately three feet from him, the officer turned around, produced the search warrant, showed the defendant his badge, and informed the defendant that he was a policeman with a warrant to search the defendant and

his house. He then "patted down" the defendant; did not otherwise search him; and neither he nor any of the other officers placed the defendant against the van. The officers and the defendant proceeded to the defendant's residence. Smith, who was accompanied by the defendant, was the first officer to enter the house, and the others followed him inside. The door of the house was open three-quarters of the way. Once inside the house, Smith gave the defendant the warrant, told him to read it so he fully understood it. Although the defendant looked at the warrant, the officer did not know whether the defendant read it.

Officer Smith further testified that normally he would knock on the door and then break it down with a sledge hammer if he received no answer. He did not follow normal procedure in this case because it was 3:50 in the morning, he was aware that a child lived in the house, and he did not want anyone to get hurt. None of the other officers testified at the hearing.

The trial court denied the motions to quash the search warrant on all grounds alleged except paragraphs three and four of the second motion which was directed to the execution of the search warrant and the failure of the officers to "knock and announce" and the absence of exigent circumstances to forego this requirement. The trial court in orally stating his decision made factual determinations that exigent circumstances were not shown; that the officers created a subterfuge to get defendant outside the house; that the officer directly and unequivocally announced he was a police officer, said that he was there for the purpose of a search, and produced the search warrant; that there was no force used in entry into the house; that there was force used to physically secure the defendant outside the house; that the officer "patted down" the defendant rather than searched him; and that the door to the house "may well have been" somewhat open. The court then granted the defendant's motion on the apparent basis that the force used to secure the defendant was equivalent to force used to enter a house which, otherwise, may not be employed without the officers first knocking and announcing their purpose.

The State's sole contention on appeal is that the police substantially complied with the "knock and announce" rule prior to executing the search warrant and, hence, the subsequent search of the defendant's premises was a reasonable one under the fourth amendment to the United States Constitution (U.S. Const., amend. IV), given the particular facts and circumstances of the present case. More specifically, the State asserts that the police lawfully lured the defendant from his house and into their presence to facilitate execution of a

search warrant directed against his person; that the police were justified in using a reasonable amount of force to restrain and search or "pat down" the defendant outside the residence; and that the police were not obligated to knock on the door again before entering the residence with the defendant or to repeat the announcement of their authority and purpose to the defendant's common-law wife and her daughter before entering the defendant's home. The defendant argues that the trial court correctly found there was force used in the execution of the warrant and has not asserted on appeal any other basis for quashing of the search warrant as was urged below in its motion.

Illinois has no statutory requirement that an officer must announce his authority and purpose before entering a building to conduct a search pursuant to a search warrant. Section 108—8 of the Code of Criminal Procedure of 1963 provides that "[a]ll necessary and reasonable force may be used to effect an entry into any building or property or part thereof to execute a search warrant." (Ill. Rev. Stat. 1979, ch. 38, par. 108—8.) The State, however, does not challenge the existence of the "knock and announce" rule in Illinois as set forth in *People v. Ouellette* (1979), 78 Ill. 2d 511, 401 N.E.2d 507; see also *People v. Conner* (1979), 78 Ill. 2d 525, 401 N.E.2d 513. The purpose of this rule is to notify the person inside of the presence of police and of the impending intrusion, give that person time to respond, avoid violence, and protect privacy as much as possible. (*People v. Ouellette* (1979), 78 Ill. 2d 511, 518, 401 N.E.2d 507; *People v. Seybold* (1981), 98 Ill. App. 3d 236, 239, 423 N.E.2d 1132.) An exception to the "knock and announce" rule has been created when exigent circumstances exist. (See *People v. Ouellette; People v. Conner.*) However, we are not here concerned with that exception as the court below found no exigent circumstances and the State does not seek to justify its action on that basis.

Instead, we must determine whether the subterfuge used to cause the defendant to come to the door and exit the premises coupled with the subsequent announcement of the officers' purpose and authority while the defendant was forcibly detained, is in compliance with the rule. Case law in Illinois under a similar factual situation is sparse. In *People v. Bargo* (1978), 64 Ill. App. 3d 1011, 382 N.E.2d 83, a police officer dressed as a postman gained entry into a home after ringing the doorbell and informing the defendant he had a package for her. The trial court found that only after entry was gained did the officer then announce his office. In reversing the trial court which had suppressed the evidence on the basis of the manner of execution of the search warrant, the appellate court held that absent the use of force,

the employment of a subterfuge to gain entry to a home to execute a search warrant is not prohibited by section 108—8 and other decisions of the courts of this State. (64 Ill. App. 3d 1011, 1013, 382 N.E.2d 83.) Similarly, the use of deception to lure a defendant from his home in order to effectuate an arrest without a warrant has been held not to violate fundamental fairness. See *People v. Moore* (1981), 105 Ill. App. 3d 264, 434 N.E.2d 300.

In decisions of other States, an entry obtained by some form of ruse without the use of force has been held to be reasonable and not to infringe upon the fourth amendment's prohibition against unreasonable searches and seizures. (*State v. Iverson* (Iowa 1978), 272 N.W.2d 1; *State v. Williams* (Mo. App. 1976), 539 S.W.2d 530; *State v. Valentine* (1972), 264 Or. 54, 504 P.2d 84, *cert. denied* (1973), 412 U.S. 948, 37 L. Ed. 2d 1000, 93 S. Ct. 3001; *People v. Veloz* (1971), 22 Cal. App. 3d 499, 99 Cal. Rptr. 519; see also 2 W. LaFave, Search and Seizure sec. 4.8(b), at 127-28 (1978).) The majority of Federal circuits which have discussed the issue have held that an entry by ruse does not breach the Federal statute. (See *United States v. Hutchinson* (8th Cir. 1973), 488 F.2d 484; *United States v. Beale* (5th Cir. 1971), 445 F.2d 977; see also *State v. Iverson* (Iowa 1978), 272 N.W.2d 1 (Federal cases listed therein).) The fact that the person is just outside the dwelling at the time the officers identify themselves and read him the warrant is immaterial, and substantial compliance with the "knock and announce" rule is found. *State v. Koberstein* (1972), 8 Or. App. 307, 493 P.2d 176; *Beckers v. Superior Court* (1970), 9 Cal. App. 3d 953, 88 Cal. Rptr. 602; see also *Mills v. State* (Okla. Crim. App. 1979), 594 P.2d 374.

In the case at bar, the trial court stated that he found the officer announced his office, stated their purpose, and produced a search warrant. There was no forced entry into the dwelling, no violence occurred during the entry into the dwelling, and there was no damage to property. The trial court also stated that the door to the dwelling "may well have been" somewhat open. It is evident too that the other occupants of the house besides defendant were aware that the officers were outside the house and might return once their investigation, albeit a ruse unknown to the occupants, was completed. Under these circumstances, the purposes of the "knock and announce" rule are satisfied, and the entry by ruse here is clearly less intrusive than the typical breaking situation. While there is evidence from the defendant and Maxine Gambony that one of the officers had a weapon drawn at his side when he first knocked at the door, we do not regard this fact under all the circumstances present as being a show of force by which

entry was gained. This evidence was contradicted by Officer Smith. Even if the weapon was drawn, entry was not gained as a result of the presence of the weapon but its display would only have been a part of the ruse used to deceive the defendant into believing a crime was being investigated outside the dwelling. Furthermore, we will not impose any requirement under these facts that the officers "knock and announce" their purpose a second time to the occupants after having already informed the defendant who was the male head of the household of their office and purpose. (See *Beckers v. Superior Court* (1970), 9 Cal. App. 3d 953, 88 Cal. Rptr. 602.) Thus, we conclude that the purposes of the "knock and announce" rule were satisfied under the particular facts here and the subterfuge used to get the defendant out of the premises does not offend the fourth amendment.

Finally, we must also determine whether the method by which defendant was detained and searched or "patted down" outside the dwelling employed such force as to itself violate one of the very purposes of the rule which is to avoid violence. The trial court stated that "there was an amount of force used to physically secure the person of the defendant." However, the court did not specifically find whether it believed defendant's version that his arm was twisted and he was thrown up against the van and held, his legs spread apart, and searched while one officer had his gun drawn, or Officer Smith's testimony that no weapons were drawn, no force used, and the defendant was only "patted down." Given the trial court's comments and defendant's burden to establish that the search and seizure was unlawful in a motion to suppress a search warrant (Ill. Rev. Stat. 1979, ch. 38, par. 114—12(b)), we conclude from the evidence that the defendant here who was named as the person to be searched in the search warrant was reasonably detained and searched or "patted down." A person authorized to be searched pursuant to a search warrant must necessarily be reasonably restrained in order for police officers to execute the search of his person as authorized by the search warrant. (*People v. Wolski* (1980), 83 Ill. App. 3d 17, 25, 403 N.E.2d 528, *cert. denied* (1981), 450 U.S. 915, 67 L. Ed. 2d 339, 101 S. Ct. 1356.) Moreover, it has been held constitutionally permissible to detain an occupant of the premises who was found on the steps of a house described in a search warrant to be searched for contraband. (See *Michigan v. Summers* (1981), 452 U.S. 692, 69 L. Ed. 2d 340, 101 S. Ct. 2587.) Thus, there is clear authority to reasonably detain the defendant here. Having previously established probable grounds for a search warrant to search defendant's person, the officers have a concomitant right to initially or contemporaneously with the search

"pat down" the person named in the warrant for weapons.

Even were we to accept defendant's version that his arm was twisted and he was thrown up against the van to be searched, this circumstance, although not to be condoned, cannot be construed as a violent occurrence. Nor is it directly associated with an unannounced entry into a house which is one of the bases of the "knock and announce" rule. While we do not find the force used to detain and search or "pat down" the defendant unreasonable here, each case must be taken on an individual basis considering the subterfuge employed and the reasonableness of the method of entry in light of the purposes of the "knock and announce" rule.

For the foregoing reasons, the order of the circuit court is reversed and the cause remanded for trial.

Reversed and remanded.

SEIDENFELD, P.J., and HOPF, J., concur.