**Salem**

CHESTER RALPH TURNER

v.

COMMONWEALTH OF VIRGINIA

No. 1577-90-3

Decided June 16, 1992

738

COUNSEL

John H. Kennett, Jr., for appellant.

Thomas C. Daniel, Assistant Attorney General (Mary Sue Terry, Attorney General, on brief), for appellee.

OPINION

**COLEMAN, J.,**—Chester Ralph Turner appeals his convictions on two counts of possessing with intent to distribute oxycodone, also known as Percocet, a Schedule II controlled substance, in violation of Code § 18.2-248. Turner presents two issues of first impression in Virginia. First, he argues that the trial court erred by refusing to suppress the evidence seized from his home because the search warrant was not executed "forthwith" as required by Code § 19.2-56. Second, Turner contends that the search violated his fourth amendment rights because the probable cause initially supporting the issuance of the search warrant had dissipated or become stale by the time the warrant was executed.

We find no merit in Turner's contentions. Code § 19.2-56 contains two time limitations, a fifteen-day bar and a "forthwith" requirement. The fifteen-day bar serves to extinguish absolutely the viability of a search warrant if not executed within fifteen days, regardless of circumstances. The "forthwith" requirement of Code § 19.2-56 is directory and defines the policy of the Commonwealth that search warrants be executed as soon as reasonably practical while probable cause continues to exist. "Forthwith" is a practical and flexible standard which must conform to the necessities of circumstances. Because the question whether the police officers complied with the "forthwith" requirement necessarily entails a determination whether probable cause continued to exist at the time the warrant was executed, our analysis of the first question will decide the second issue—whether the information upon which probable cause was found had dissipated or become stale.

On January 24, 1989, at 4:56 p.m., Sergeant D.F. Ragland of the Roanoke City Police Department obtained a search warrant authorizing the search of the residence located at 2614 Huntington Boulevard, N.W., Roanoke, Virginia, and the search of an occupant who was specifically described by age, appearance, and physical characteristics. The warrant was issued on facts provided by a reliable informant who had observed, within a seventy-two hour period before the issuance of the warrant, "a large quantity of white tablets being offered for sale" by a specifically described individual at the Huntington Boulevard dwelling. The affidavit stated that the person described was an occupant of the dwelling. The informant, a self-admitted drug user, advised the officer that he believed, based on his familiarity with the appearance and packaging of drugs, that the tablets were Dolophine (methodone).

On the day the warrant was issued, Sergeant Ragland and other officers of the Roanoke City Police Department went to the Huntington Boulevard residence to execute the search. Finding no one there, and pursuant to a division policy against executing search warrants at unoccupied residences, the officers did not conduct the search.

On January 26, 1989, the officers again went to execute the warrant at the Huntington Boulevard address and, once more, found the residence unoccupied. On four more occasions between January 26 and February 4, 1989, Sergeant Ragland directed the officers to check the residence for the presence of someone, but on

each occasion, the officers found it unoccupied and did not execute the warrant.

On February 4, 1989, Sergeant Ragland was notified by the same informant that the occupant he had previously described had returned to the Huntington Boulevard residence and had "resumed drug sales." Sergeant Ragland directed Detective M.A. Lee to execute the search warrant. Detective Lee and several other officers went to the Huntington Boulevard residence. As two officers approached the residence on foot, a person who matched the occupant described in the warrant came from the home, got in an automobile, and drove away. The officers followed, stopped the vehicle, and searched the occupant and his vehicle. The occupant was Chester Ralph Turner, the appellant. The officers returned with Turner to the Huntington Boulevard residence and searched it. They seized from the residence quantities of oxycodone and meperidine. They arrested Turner and charged him with two counts of possessing a Schedule II controlled substance.[1] Turner moved to suppress the evidence seized from the Huntington Boulevard dwelling, which motion the trial court denied. His appeal challenges that ruling.

Code § 19.2-56 provides that "[t]he [search] warrant shall command that the place be *forthwith* searched." (emphasis added). The statute further provides that "[a]ny search warrant not executed within fifteen days after issuance thereof shall be returned to, and voided by, the officer who issued such search warrant." Code § 19.2-56.

Turner contends that the officers unduly delayed executing the search warrant by going to the residence on six occasions and not conducting the search, and that by doing so, they violated Code § 19.2-56 and the judicial directive in the warrant to search "forthwith." Turner argues that, although the statute imposes a maximum limit of fifteen days by which a search warrant must be executed, the "forthwith" requirement in the statute imposes a substantive restriction that officers execute the warrant "forthwith" but no later than fifteen days. "Forthwith," he contends, means immediately and without undue delay. He also contends

---

[1] The legality of the search of the appellant's person and vehicle are not at issue because the Commonwealth prosecuted Turner only for the offenses arising from the evidence seized at the dwelling.

that the fourth amendment requires that the probable cause supporting the issuance of a search warrant must continue to exist at the time the warrant is executed. Based on the eleven day delay in executing the warrant, he argues that the officers did not search "forthwith," and that the probable cause to search the residence had dissipated and no longer existed. Thus, he argues that the evidence seized should be suppressed because the statute and fourth amendment were violated.

■ By establishing a fifteen-day limitation period in Code § 19.2-56, the General Assembly did not intend to provide that search warrants executed within that time would be conclusively presumed to have been executed timely. Such an interpretation would render the "forthwith" language of the statute meaningless, a result that we cannot attribute to the legislature. *See Jones v. Conwell*, 227 Va. 176, 181, 314 S.E.2d 61, 64 (1984). The "forthwith" requirement has an independent substantive meaning. "Forthwith", within the context of Code § 19.2-56, does not mean immediately or as soon as physically possible. *See, e.g., United States v. Wilson*, 491 F.2d 724, 725 (6th Cir. 1974) ("forthwith" construed to permit reasonable delay), *cert. denied*, 426 U.S. 907 (1976). It does not mandate that officers must immediately execute the search warrant without regard to the circumstances that obtain. The fact that the statute provides that the warrant expires if not executed within fifteen days means that some latitude is provided for the time within which the search may be conducted. But, under that statute, "it is . . . necessary that search warrants be executed with some promptness in order to lessen the possibility that the facts upon which probable cause was initially based do not become dissipated." *United States v. Nepstead*, 424 F.2d 269, 271 (9th Cir.), *cert. denied*, 400 U.S. 848 (1970). The statute includes a codification of the constitutional requirement that the search must be conducted while probable cause continues to exist, but it goes beyond that. The "forthwith" requirement defines the policy of the state that search warrants, which are the foremost safeguard to protect against unreasonable searches proscribed by the Fourth Amendment, are to be executed with reasonable dispatch.

Some courts in jurisdictions with statutes having a "forthwith" provision similar to that in Code § 19.2-56 have held that the "forthwith" requirement is satisfied so long as the warrant is executed within the number of days allowed by statute. *See, e.g., State v. Edwards*, 98 Wis. 2d 367, ___, 297 N.W.2d 12, 16

(1980). However, as noted, this approach renders the "forthwith" requirement meaningless. Several federal courts when construing the "forthwith" requirement of former Rule 41, Fed. R. Crim. P., which rule contained a maximum ten-day period for executing the search, held that "forthwith" imports the independent requirement that the government prove that any delay in executing the warrant within the statutory time limit was "reasonable." *See United States v. Lemmons*, 527 F.2d 662 (6th Cir. 1975), *cert. denied*, 429 U.S. 817 (1976); *Wilson*, 491 F.2d 724; *United States v. Harper*, 450 F.2d 1032 (5th Cir. 1971); *United States v. Dunnings*, 425 F.2d 836 (2d Cir. 1969). Under this approach, in deciding what is "reasonable," courts look at the justification for and length of the delay to decide whether the search was conducted "forthwith."

■ This approach comports with our view that the provision in Code § 19.2-56 that a search warrant be executed "forthwith" is a directive to police officers to execute the warrant with reasonable dispatch and without undue delay. Thus, in addition to codifying the constitutional mandate, it also requires the officer to conduct the search as soon as reasonably practicable under the circumstances. This construction of Code § 19.2-56 accords police officers a limited amount of flexibility in deciding when to execute search warrants. In many situations, some delay is unavoidable, necessary, or even desirable. Moreover, this approach, which is grounded in the fourth amendment requirement that probable cause must also exist at the time a search warrant is executed, *see United States v. Bowling*, 900 F.2d 926, 932 (6th Cir.), *cert. denied*, 498 U.S. 837 (1990); 2 Wayne R. LaFave, *Search and Seizure* §4.7(a), at 261 (2d ed. 1987), is consistent with Virginia case law that state search and seizure protections are coextensive with federal constitutional protections. *Kirby v. Commonwealth*, 209 Va. 806, 808, 167 S.E.2d 411, 412 (1969); *One 1963 Chevrolet Pickup Truck v. Commonwealth*, 208 Va. 506, 508, 158 S.E.2d 755, 757, *cert. denied*, 391 U.S. 964 (1968).

We turn to whether the facts set forth in the affidavit in support of the search warrant for the Huntington Boulevard residence furnished probable cause to believe that evidence of criminal activity or contraband was still located at the residence at the time the officers executed the search warrant eleven days after its issuance.

██ "Probable cause, as the very name implies, deals with probabilities. These are not technical; they are factual and practical considerations in every day life on which reasonable and prudent men, not legal technicians, act." *Derr v. Commonwealth*, 242 Va. 413, 421, 410 S.E.2d 662, 666 (1991) (quoting *Saunders v. Commonwealth*, 218 Va. 294, 300, 237 S.E.2d 150, 155 (1977)). Probable cause exists where the totality of the circumstances set forth in the affidavit supports a common sense decision by the magistrate that "there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983). "[P]robable cause is a fluid concept—turning on the assessment of probabilities in particular factual contexts—not readily, or even usefully, reduced to a neat set of legal rules." *Id.* at 232. Because it is a fluid concept based on probabilities, the continued existence of probable cause at a particular time is dependent upon the circumstances. So long as probable cause continues to exist, the search will be valid. *See United States v. Bedford*, 519 F.2d 650, 655 (3d Cir. 1975).

██ While the Virginia Supreme Court has not addressed the issue raised by this case, it has considered the related issue of a delay between learning the facts that gave rise to probable cause and the issuance of a warrant based on those facts. *See* 2 Wayne R. LaFave, *supra* §4.7(a), at 262 n.11. In *Stovall v. Commonwealth*, the Court concluded that "[w]hile time alone is not controlling, evidence that one was illegally in possession of drugs on a given date is not probable cause to believe that he possesses illegal drugs 72 days thereafter." 213 Va. 67, 70, 189 S.E.2d 353, 356 (1972). In *Huff v. Commonwealth*, the affidavit used to issue two successive search warrants a week apart recounted that the defendant, who had been previously convicted of possessing a Schedule II controlled substance with the intent to distribute, had engaged in criminal drug activities "in recent weeks" and "on a recent date." 213 Va. 710, 716, 194 S.E.2d 690, 695 (1973). The Court in *Huff* held that

> [t]he commonsense conclusion to be drawn from such facts is that the pattern of criminal practice probably was yet continuing on the date of the affidavit; that drugs would probably continue until the warrant was executed; and that drugs would probably be found at that time in Huff's residence.

*Id.* at 717, 194 S.E.2d at 696. *See also Pierceall v. Commonwealth*, 218 Va. 1016, 243 S.E.2d 222 (1978), *cert. denied*, 439 U.S. 1067 (1979). Thus, by analogy, when a warrant has been issued based upon probable cause, whether probable cause continues to exist at the time the warrant is executed depends on the length of delay and the nature of the observed criminal activity, that is, whether the activity is an ongoing enterprise or an isolated incident.

■ "[A] warrant based on a known presence of contraband at the premises rests . . . on the expectation that the contraband will remain there until the warrant is executed." *United States v. Garcia*, 882 F.2d 699, 702 (2d Cir. 1989) (citing Wayne R. LaFave, *Search and Seizure* 701 (1978)). When delay occurs between the issuance and execution of a search warrant, whether probable cause to search continues to exist at the time the warrant is executed depends on "the facts and circumstances of the case, including the nature of the unlawful activity alleged, the length of the activity and the nature of the property to be seized." *United States v. McCall*, 740 F.2d 1331, 1336 (4th Cir. 1984). As the Maryland Court of Appeals explained in *Donaldson v. State*, 46 Md. App. 521, 420 A.2d 281 (1980):

> The ultimate criterion in determining the degree of evaporation of probable cause, however, is not case law but reason. The likelihood that the evidence sought is still in place is a function not simply of watch and calendar but of variables that do not punch a clock: the character of the crime (chance encounter in the night or regenerating conspiracy?), of the criminal (nomadic or entrenched?), of the thing to be seized (perishable and easily transferable or of enduring utility to its holder?), of the place to be searched (mere criminal forum of convenience or secure operational base?), etc. The observation of a half-smoked marijuana cigarette in an ashtray at a cocktail party may well be stale the day after the cleaning lady has been in; the observation of the burial of a corpse in a cellar may well not be stale three decades later. The hare and the tortoise do not disappear at the same rate of speed.

*Id.* at 530, 420 A.2d at 286 (quoting *Andresen v. State*, 24 Md. App. 128, 172, 331 A.2d 78, 106, *cert. denied*, 274 Md. 725 (1975), *aff'd*, 427 U.S. 463 (1976)).

The warrant was issued based upon probable cause to believe that "a large quantity of white tablets" believed to be Dolophine would probably be found at Turner's Huntington Boulevard residence. The delay of eleven days between issuing the warrant and the search, standing alone, did not vitiate the reasonable belief that contraband would be on the premises and in the possession of the described occupant. *See Donaldson*, 46 Md. App. 521, 420 A.2d 281 (1981) (eleven day delay in execution did not invalidate search pursuant to warrant); *United States v. Byars*, 762 F. Supp. 1235 (E.D. Va. 1991) (nine day delay upheld under Fed. R. Crim. P. 41(c)(1) and Code § 19.2-56); *State v. Melanakis*, 129 W. Va. 317, 40 S.E.2d 314 (1946) (nine day delay was in compliance with "forthwith" command); *United States v. Dunnings*, 425 F.2d 836 (2d Cir. 1969) (nine day delay did not invalidate warrant or search pursuant thereto), *cert. denied*, 397 U.S. 1002 (1970). *See also McCall*, 740 F.2d 1331 (4th Cir. 1984) (probable cause for issuance of warrant found to exist despite seven month lapse between observation of contraband and application for warrant); *Davidson v. State*, 54 Md. App. 323, 458 A.2d 875 (1983) (nineteen day delay between controlled buy and issuing warrant).

The nature of the activity in which the informant observed Turner engaged would lead one reasonably to believe that contraband would still be located in the residence when the officers conducted the search. Admittedly, the informant had on only one occasion observed "a large quantity of white tablets [believed to be Dolophine] being offered for sale." The informant indicated that the tablets were being offered for sale from a residence at Huntington Boulevard in Roanoke. The fact that the drugs were described as "a large quantity" and that they were "being offered for sale" from a residence suggest a continuing enterprise. The selling of drugs, by its nature, is an ongoing activity. *See Donaldson*, 46 Md. App. at 530, 420 A.2d at 286. Although isolated sales of narcotics unquestionably occur, the fact that the informant observed "a large quantity" of white tablets "being offered for sale" would lead a reasonable person to believe that some of the tablets believed to be Dolophine remained at the residence after the informant had observed them. The evidence would further suggest that this activity was not an isolated incident. Consequently, the police officers reasonably could have concluded that the contraband remained at the residence after the informant left and would remain there until the person who had been en-

gaged in the illegal sale of the drugs returned, at which time they would execute the search warrant.

Under the circumstances of this case, the police officers, by waiting eleven days to execute the warrant, did not violate the "forthwith" provision of the statute or the fourth amendment. The officers executed the warrant as soon as reasonably practicable under the circumstances. The warrant identified both a residence and its occupants as targets to be searched. The officers checked the residence at least six times, only to find the person who was also the object of the search not present. Immediately after learning that the described occupant had returned, the officers executed the search warrant. Based on these circumstances, we hold that the officers executed the warrant as soon as reasonably practicable and, thus, that they complied with the directory component of the "forthwith" language in Code § 19.2-56.[2]

■■■ Furthermore, the search was not invalid because the police officers waited until Turner returned to the residence before executing the search warrant. The warrant directed the officers to search both the residence and a specifically described occupant. No defect inheres in a warrant that orders officers to search both a dwelling and a person so long as the warrant is supported by probable cause to search both. *See United States v. Ward*, 682 F.2d 876 (10th Cir. 1982); *People v. Sunday*, 109 Ill. App. 3d 960, 441 N.E.2d 374 (1982). *See also* LaFave, *supra*, § 4.9(a), at 291. The officers had learned from the informant just before executing the search warrant that the occupant had returned and had resumed sales in the residence. By waiting until the occupant had returned, the officers did no more than that which the warrant commanded. An officer executing a search warrant may, within the statutory period, execute the warrant at a reasonable time when it appears most opportune to do so in order to successfully accomplish the purpose of the search, to minimize the risk of having the contraband destroyed or secreted, or to protect the safety of the officers. In other words, the fact that the officers delay exe-

[2] We do not intend to imply that the only circumstances relevant to the issue whether the warrant was executed "forthwith" are those relating to the nature or scope of the persons or premises to be searched. Other relevant considerations might include the safety of the officers executing the warrant, the safety of others in the area and other competing law enforcement interests which preclude an immediate execution of the warrant.

cuting a search warrant until a time the officer determines will be most opportune to yield a successful result does not invalidate the warrant so long as probable cause continued to exist at the time of execution. While the purpose of a search warrant is to seize illegal contraband, functionally it is an investigative tool often used by police officers to apprehend those who are engaged in criminal activity. Furthermore, the prophylactic purpose of the search warrant processes is not undermined by permitting police officers "to make the judgment that the averments of the affidavit are again satisfied, after a period of doubt." *Dunnings*, 425 F.2d at 840. Protection of the individual's privacy is furthered by requiring that a search warrant be executed with reasonable promptness while probable cause continues to exist within the time limits provided by statute. *See United States v. Bedford*, 519 F.2d, 650, 656 (3d Cir. 1975) (quoting *Dunnings*, 425 F.2d at 840); *see also United States v. Byars*, 762 F. Supp. 1235, 1239 (E.D. Va. 1991) (officers delayed executing search warrant for nine days awaiting a narcotics shipment to ensure that drugs, the "tools of the business," would be present in the apartment).

Accordingly, we hold that the police executed the warrant as soon as reasonably practicable under the circumstances and that the probable cause that initially supported the search warrant being issued for the Huntington Boulevard residence and the occupant continued to exist eleven days later when the warrant was executed. Thus, the officers executed the warrant "forthwith" within the meaning of Code § 19.2-56[3] and in compliance with the requirements of the fourth amendment.

---

[3] Because we hold that the officers complied with the directory component of Code § 19.2-56 and with the constitutional continuing probable cause requirement, we leave for another day whether a statutory violation, without a constitutional one, requires suppression of the evidence obtained as a result of the violation. *But see Frye v. Commonwealth*, 231 Va. 370, 345 S.E.2d 267 (1986); *Horne v. Commonwealth*, 230 Va. 512, 339 S.E.2d 186 (1986); *cf. United States v. Bedford*, 519 F.2d 650, 657 n.17 (3d Cir. 1975) (statutory violation warrants suppression only where defendant can show prejudice attributable to unreasonable delay), *cert. denied*, 424 U.S. 917 (1976); *United States v. Dunnings*, 425 F.2d 830, 841 (2d Cir. 1969) (Smith, J. concurring) (evidence should not be suppressed in absence of prejudice attributable to delay).

We find no error in the trial court. Therefore, we affirm the convictions.

*Affirmed.*

Koontz, C.J., and Elder, J., concurred.