COURT OF APPEALS OF VIRGINIA


Present: Judges Bray, Bumgardner and Senior Judge Hodges
Argued at Chesapeake, Virginia


ANTONIOUS LAMONT CLARK

MEMORANDUM OPINION* BY
v.    Record No. 0581-00-1     JUDGE RUDOLPH BUMGARDNER, III
                                      APRIL 17, 2001
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF NEWPORT NEWS
H. Vincent Conway, Jr., Judge

Charles E. Haden for appellant.

Stephen R. McCullough, Assistant Attorney
General (Mark L. Earley, Attorney General, on
brief), for appellee.


Antonious Lamont Clark was convicted of possession of
cocaine, possession of marijuana, and possession of a firearm
while in possession of a controlled substance. He contends the
trial court erred in not suppressing evidence seized during
execution of a search warrant at his residence. He argues (1)
the warrant was not supported by probable cause, (2) the facts
used to support the probable cause finding were stale, and (3)
the good faith exception to the exclusionary rule does not
apply. We conclude the search warrant was properly issued and
affirm the convictions.

_____

    * Pursuant to Code § 17.1-413, this opinion is not
designated for publication.

Detective Wayne A. Sorrell submitted a five-page, typed affidavit detailing information provided by a citizen-informant and further developed through his investigation of those reports. The magistrate found probable cause and issued a search warrant for the defendant's person and his apartment.

On October 5, 1998, a citizen contacted the Newport News Police Department and reported that the defendant possessed cocaine within the past 48 hours. The citizen advised that the defendant possessed a handgun and had sold drugs at two specified locations within the city. Acting on the information, Sorrell two days later sent a reliable informant to the defendant's address. The informant could not purchase drugs but reported that a man in the apartment fit the defendant's description. The man had a violent or threatening manner and implied he was armed.

On October 9, 1998, the detective again spoke with the citizen-informant. The citizen had seen the defendant in his apartment processing cocaine into crack within the last seventy-two hours. The citizen advised that the defendant smoked marijuana and had been selling cocaine from his residence since June 1998. The citizen described the drug activity in the defendant's neighborhood, named individuals who traded drugs there, and demonstrated detailed knowledge of drug processing techniques. Sorrell felt the citizen had extensive knowledge about the distribution of cocaine. The detective's experience

-

with the drug traffic in that neighborhood conformed with the citizen's report.

The citizen revealed specific details about the defendant including his date of birth, length of residence at the apartment, and the make, model, and year of the car used to transport drugs. He described exterior damage to the car, named the owners of the car, and gave their address. The citizen knew that the defendant's driver's license was suspended and that he had recently been to court for driving on a suspended license. Sorrell verified that information through the Division of Motor Vehicles. He also determined that the defendant's criminal record, which included drug and firearm offenses and acts of violence, corresponded with the information provided by the citizen.

The citizen provided Sorrell with the plan of the defendant's apartment. It had two floors and a shed. He advised that the defendant stored drugs in both places and kept a black 9-millimeter handgun in a black case. The gun was either beside the defendant's bed, on a dresser in his bedroom, or on his person. On October 10, 1998, the citizen told Sorrell that the defendant continued to sell cocaine but was otherwise unemployed.

The citizen-informant met with the detective and provided his name, his length of residence in the area, his employment, and lack of criminal history. Sorrell verified the

-

identification through criminal history and motor vehicle records. He found no discrepancies.

The information in the affidavit came from a citizen-informant. While the citizen wished to remain anonymous, he was anonymous only in not being named in the affidavit. "Citizen-informants do not carry the same presumption of reliability as police officers, but less evidence is required to establish their veracity than that of criminal informants." Corey v. Commonwealth, 8 Va. App. 281, 287, 381 S.E.2d 19, 22 (1989) (citations omitted). "[W]e will not apply to citizen informers the same standard of reliability as is applicable when police act on tips from professional informers or those who seek immunity for themselves, whether such citizens are named, . . . or, as here, unnamed." Guzewicz v. Commonwealth, 212 Va. 730, 735-36, 187 S.E.2d 144, 148 (1972) (citations omitted).

The detective investigated the defendant's personal data provided by the citizen and verified specific details. "A citizen-informant's veracity may be established by . . . independent police corroboration of the details [they] provided . . . ." Corey, 8 Va. App. at 287, 381 S.E.2d at 22 (citation omitted). "[C]orroboration of apparently innocent details of an informant's report tends to indicate that other aspects of the report are also correct." United States v. Lalor, 996 F.2d

-

1578, 1581 (4th Cir.), cert. denied, 510 U.S. 983 (1993) (citations omitted).

Much of the information the citizen provided was detail not easily observed or readily available to the public. It revealed personal knowledge of, and familiarity with, the defendant and his activities in his apartment. An assertion of personal observation is more persuasive than other types of information. Boyd v. Commonwealth, 12 Va. App. 179, 191, 402 S.E.2d 914, 922 (1991). "[E]ven if we entertain some doubt as to the informant's motives, his explicit and detailed description of alleged wrongdoing, along with a statement that the event was observed first-hand, entitles his tip to greater weight than might otherwise be the case." Illinois v. Gates, 462 U.S. 213, 234 (1983).

The citizen reported that the defendant was unemployed and earned his living by selling drugs. On October 9, the citizen told Sorrell that within the past 72 hours he had personally observed the defendant processing cocaine into crack. On October 10, the citizen advised Sorrell the defendant continued to sell cocaine. The magistrate issued the warrant on October 12, 1998.

"[W]hether probable cause continues to exist at the time the warrant is executed depends on the length of delay and the nature of the observed criminal activity, that is, whether the activity is an ongoing enterprise or an isolated incident."

-

Turner v. Commonwealth, 14 Va. App. 737, 745, 420 S.E.2d 235, 239 (1992) (eleven-day delay in executing warrant for contraband in residence permissible). In Commonwealth v. Moss, 14 Va. App. 750, 752, 420 S.E.2d 242, 243 (1992), we held that a five-day delay in executing a search warrant was permissible. Where the evidence reveals ongoing drug activity, there is "no basis for deeming that the circumstances providing probable cause for the search had grown stale by the time the warrant was executed." Id. at 753, 420 S.E.2d at 243.

Based on the facts in the affidavit, "we find that the information was not rendered stale by the time frame presented and, as such, that a substantial basis existed for the magistrate's determination of probable cause." Tart v. Commonwealth, 17 Va. App. 384, 389, 437 S.E.2d 219, 222 (1993). We conclude the magistrate issued the search warrant upon probable cause and the trial court properly denied the motion to suppress the evidence seized during its execution.

Affirmed.

-