COURT OF APPEALS OF VIRGINIA


Present: Judges Bray, Frank and Humphreys
Argued at Chesapeake, Virginia


COLLIN W. WHITAKER, S/K/A
 COLLIN WAYNE WHITAKER
                                              OPINION BY
v.   Record No. 2802-00-1        JUDGE ROBERT J. HUMPHREYS
                                            OCTOBER 16, 2001
COMMONWEALTH OF VIRGINIA


          FROM THE CIRCUIT COURT OF THE CITY OF NEWPORT NEWS
                     Verbena M. Askew, Judge

            Willard M. Robinson, Jr. (Law Offices of
            Willard M. Robinson, Jr., on brief), for
            appellant.

            Marla Graff Decker, Assistant Attorney
            General (Randolph A. Beales, Acting Attorney
            General, on brief), for appellee.


     Collin W. Whitaker appeals his conviction after a bench

trial of possession of marijuana with intent to distribute.

Whitaker contends the trial court erred in denying his motion to

suppress evidence, which he argues was obtained under the

authority of a stale search warrant and as a result of an

unlawful detention.  For the reasons that follow, we affirm in

part and reverse in part and remand.

                        I.  Background

     On March 7, 2000, Detective Randy Ronneberg of the Newport

News Police Department Narcotics Division received information

from a "reliable informant" that "a black male, dark brown

skinned, 5'7"-5'8", 200-225 lbs, fade hair cut, slight mustache, 34-38 yrs old," had sold marijuana to an individual in a "hand to hand [sic] transaction for money," at a residence located at 519 North Avenue in Newport News. The informant also indicated that a "quantity of marijuana remained for sell [sic] by this black male," that the man drove a gray truck, that the man was only present at the dwelling when the truck was parked in the driveway, and that the man kept two large attack dogs inside the dwelling.

Based on this information, Detective Ronneberg immediately obtained a warrant to search the dwelling located at 519 North Avenue. The warrant authorized police to search the premises for marijuana, money, records, and all other "drug-related" paraphernalia. That same evening, police officers began surveillance of the residence. However, the gray truck was not present. The officers continued to watch the residence on March 8, 2000 and March 9, 2000, but the gray truck was not present on either day.

On March 13, 2000, Detective Ronneberg received information that the gray truck was present at the residence. Detective Brandon Price reported to the location. About ten minutes after he arrived, he observed a "black male" get into the truck and leave the residence. Price followed the truck and observed that the driver matched the description of the individual referred to in the search warrant. Price telephoned Ronneberg, who then

-

proceeded to the location and picked up surveillance of the truck.  When the truck pulled into a driveway at 315 Huntington Avenue, about a mile to a mile and one-half from 519 North Avenue, Detective Ronneberg pulled into the driveway behind it.

Detective Ronneberg approached the driver, showed the driver his badge, identified himself, and informed the driver that he "was being detained in reference to a search warrant." Ronneberg asked the driver if he was Collin Whitaker and the driver replied, "Yes."  Ronneberg then asked Whitaker if he had any narcotics on his person.  Whitaker responded that he had marijuana.  Ronneberg searched Whitaker and found marijuana.  He then arrested Whitaker and advised him of his Miranda rights.

Next, Ronneberg asked Whitaker if there were any drugs in the house to be searched.  Whitaker replied that there was a "half ounce in the house."  Whitaker also admitted that there were scales in the house.  Whitaker confirmed that there were two dogs and stated that his wife was there and would take care of them.[1]  Ronneberg and the other officers then took Whitaker back to the residence and executed the warrant.  With Whitaker's cooperation, police found an ounce and one-half of marijuana, which was packaged in three clear plastic bags, on the floor of a closet in the den area of the home.  Police also found a metal

---

[1] During the suppression hearing, Whitaker testified that he had a Chihuahua and Pit Bull in the home.

-

hand-held scale in an orange candy jar "in the same room that this marijuana was located."

The police then took Whitaker to the station for booking. While there, Ronneberg asked Whitaker about the contraband and Whitaker explained that he was "a smoker and that people came over to his house to smoke." When asked if he had "ever given anybody marijuana at [his] house," Whitaker replied, "Yes."

Whitaker was indicted for possession of more than one-half ounce, but less than five pounds, of marijuana with intent to distribute. Prior to trial, Whitaker moved to suppress the evidence related to his arrest, arguing that the warrant was stale at the time of execution, that his detention away from the residence was unlawful, and that his statement in response to Detective Ronneberg's questioning as to whether he had "ever" given marijuana to anyone was unrelated to any present intent to distribute.

During the hearing, Ronneberg testified that the length of time it took to ultimately stop Whitaker amounted to the time necessary for "[the officers] to get in [their] vehicles, get up in that area to a radio [sic] marked unit to stop the vehicle." In response to the prosecutor's question, "Matter of minutes then?" Ronneberg replied, "Correct."

After the hearing on the motion, the trial court denied the motion, finding that the officers were entitled to "a little bit of latitude in terms of what they deem to be the most opportune

-

time" to execute the warrant and that the detention was lawful because "there was a safety issue from the officer's [sic] perspective." The trial court also found that Whitaker's claim with regard to the context of his statement went to its weight as evidence, rather than its admissibility.

Whitaker moved to suppress again during trial. This motion was also denied by the trial court. Subsequently, the Commonwealth put on Detective Ronneberg as an expert witness, who opined that the weight of the marijuana found "could go either way" on the issue of whether it was consistent or inconsistent with personal use. Ronneberg further testified that the presence or absence of scales "generally [goes] with the intent to distribute," but then stated, "[he had] run across where users also have scales." He finally opined that "[d]ue to the fact of no smoking device pushes the opinion as more for distribution than it is for personal use."

At the close of evidence, the trial court found Whitaker guilty of the charge, holding:

> All right. The Court looks at the amount of
> the marijuana and how it was packaged, the
> fact that the defendant lacked credibility,
> the fact that there was no apparent
> paraphernalia that's consistent with
> personal possession was found [sic].
> Looking at the totality of the
> circumstances, the Court does not think it
> should reduce this to anything.

Whitaker was subsequently sentenced to five years imprisonment, with five years suspended.

-

We analyze the actions of the officers as three separate events:  the execution of the search warrant; the stop and detention of Whitaker; and the interrogation of Whitaker.

## II.  The Execution of the Search Warrant

Whitaker bases his chief argument on the Fourth Amendment and Code § 19.2-56, contending that the trial court erred in refusing to suppress the evidence found in his home, because the warrant upon which the search was based was stale.  We disagree.

We first note that "[q]uestions of reasonable suspicion and probable cause to . . . search are subject to de novo review on appeal.  'In performing such analysis, we are bound by the trial court's findings of historical fact unless "plainly wrong" or without evidence to support them[.]'"  Archer v. Commonwealth, 26 Va. App. 1, 8, 492 S.E.2d 826, 830 (1997) (quoting McGee v. Commonwealth, 25 Va. App. 193, 198, 487 S.E.2d 259, 261 (1997) (en banc)).  Further, when we review a trial judge's refusal to suppress evidence, we consider the "evidence adduced at both the trial and the suppression hearing."  Greene v. Commonwealth, 17 Va. App. 606, 608, 440 S.E.2d 138, 139 (1994).  On appeal, the burden is upon the appellant to show that the denial of the motion to suppress constitutes reversible error.  See Fore v. Commonwealth, 220 Va. 1007, 1010, 265 S.E.2d 729, 731 (1980).

Whitaker correctly contends that:

> Code § 19.2-56 contains two time
> limitations, a fifteen-day bar and a
> "forthwith" requirement.  The fifteen-day

-

> bar serves to extinguish absolutely the
> viability of a search warrant if not
> executed within fifteen days, regardless of
> circumstances.  The "forthwith" requirement
> of Code § 19.2-56 is directory and defines
> the policy of the Commonwealth that search
> warrants be executed as soon as reasonably
> practical while probable cause continues to
> exist.

Turner v. Commonwealth, 14 Va. App. 737, 740, 420 S.E.2d 235, 237 (1992).  Whitaker argues that it is the "forthwith" requirement of this statute that the officers failed to comply with.  However, "'[f]orthwith' is a practical and flexible standard which must conform to the necessities of circumstances."  Id.  Thus, "a warrant will be tested for 'staleness' by considering whether the facts alleged in the warrant provided probable cause to believe, at the time the search actually was conducted, that the search conducted pursuant to the warrant would lead to the discovery of evidence of criminal activity."  Johnson v. Commonwealth, 259 Va. 654, 671, 529 S.E.2d 769, 778 (2000).

> The ultimate criterion in determining the
> degree of evaporation of probable cause,
> however, is not case law but reason.  The
> likelihood that the evidence sought is still
> in place is a function not simply of watch
> and calendar but of variables that do not
> punch a clock: the character of the crime
> (chance encounter in the night or
> regenerating conspiracy?), of the criminal
> (nomadic or entrenched?), of the thing to be
> seized (perishable and easily transferable
> or of enduring utility to its holder?), of
> the place to be searched (mere criminal
> forum of convenience or secure operational
> base?), etc.  The observation of a

-

> half-smoked marijuana cigarette in an
> ashtray at a cocktail party may well be
> stale the day after the cleaning lady has
> been in; the observation of the burial of a
> corpse in a cellar may well not be stale
> three decades later. The hare and the
> tortoise do not disappear at the same rate
> of speed.

Turner, 14 Va. App. at 745, 420 S.E.2d at 240. Furthermore, other relevant considerations to whether a warrant was executed "forthwith" "might include the safety of the officers executing the warrant, the safety of others in the area and other competing law enforcement interests which preclude an immediate execution of the warrant." Id. at 747 n.2, 420 S.E.2d at 241 n.2.

Here, the warrant was issued based upon probable cause to believe the informant had witnessed Whitaker sell marijuana from his home and that "a quantity of marijuana remained for sell [sic]." The delay of six days between issuing the warrant and the search, standing alone, did not vitiate the reasonable belief that contraband would be on the premises and in the possession of Whitaker, the occupant described by the informant. The fact that the remaining drugs were described as a "quantity" significant enough for continued sale, and that they were being offered for sale from a particular residence, suggests a continuing enterprise. See id. at 746, 420 S.E.2d at 240. Indeed, we have held that "[t]he selling of drugs, by its nature, is an ongoing activity." Id.

-

In addition to the above, by his own admission, Whitaker left the home on March 7, 2000, the day the warrant was issued, and did not return until March 13, 2000, the day the warrant was executed. Consequently, the officers could have reasonably concluded that the contraband remained at the residence after the informant left and would remain there until the person who had been engaged in the illegal sale of the drugs returned.

Finally, the officers had information from the informant that Whitaker owned two attack dogs that were kept inside the house. They had no information prior to confronting Whitaker that there was anyone other than himself living at the residence. Thus, the police officers were reasonably concerned for their safety, which further supported their decision to await Whitaker's return before executing the warrant.

Accordingly, we hold that under the circumstances of this case, the police officers, by waiting six days to execute the warrant, did not violate either the "forthwith" provision of the statute or the Fourth Amendment. The officers executed the warrant as soon as reasonably practicable under the circumstances. Given our holding in this regard, we need not address the Commonwealth's contention concerning the application of the "good faith exception."

### III. The Stop and Detention

Whitaker next argues that the trial court improperly denied his motion to "suppress all evidence because the search and

-

statements made by [him] were the result of an illegal stop and warrantless arrest."  The Commonwealth, relying chiefly on Michigan v. Summers, 452 U.S. 692 (1981), Williams v. Commonwealth, 4 Va. App. 53, 354 S.E.2d 79 (1987), and Allen v. Commonwealth, 3 Va. App. 657, 353 S.E.2d 162 (1987), responds that Whitaker was lawfully seized and detained for the purpose of the execution of the search warrant.  We disagree with the position of the Commonwealth.

> The Fourth Amendment says that the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated."  U.S. Const., Amdt. 4. Its "central requirement" is one of reasonableness.  In order to enforce that requirement, this Court has interpreted the Amendment as establishing rules and presumptions designed to control conduct of law enforcement officers that may significantly intrude upon privacy interests.  Sometimes those rules require warrants.  We have said, for example, that in "the ordinary case," seizures of personal property are "unreasonable within the meaning of the Fourth Amendment," without more, "unless . . . accomplished pursuant to a judicial warrant," issued by a neutral magistrate after finding probable cause.

Illinois v. McArthur, 121 S. Ct. 946, 949-50 (2001) (quoting United States v. Place, 462 U.S. 696, 701 (1983)).  "We nonetheless have made it clear that there are exceptions to the warrant requirement.  When faced with special law enforcement needs, diminished expectations of privacy, minimal intrusions, or the like, the Court has found that certain general, or

-

individual, circumstances may render a warrantless search or seizure reasonable." Id.

Based on these principles, courts have long held that a warrant to search the premises carries with it the limited authority to detain the occupants while a proper search is conducted. See Summers, 452 U.S. at 705. In Summers, the United States Supreme Court held that it was constitutionally permissible for police officers to detain the defendant, who was found descending the front steps of his dwelling, for purposes of conducting a search of the premises authorized by a valid search warrant. See id. at 704-05. In so holding, the Supreme Court found that the minor intrusiveness of detaining a resident in his home is outweighed by the law enforcement interests in: (1) preventing flight if incriminating evidence is found; (2) minimizing the risk of harm to the officers from violent occupants; and (3) conducting an orderly search with the occupants' help in unlocking doors and containers. See id. at 701-03; see also United States v. Hogan, 25 F.3d 690, 693 (8th Cir. 1994). The Court also observed that the existence of the search warrant provided an articulable and individualized suspicion which justified the "limited authority to detain the occupants at the premises." Summers, 452 U.S. at 705; see also United States v. Cochran, 939 F.2d 337, 339 (6th Cir. 1991).

Here, Whitaker was not on or in the premises when the officers first approached the residence to execute the warrant.

-

Instead, officers watched Whitaker drive over a mile and one-half away from the premises, and waited for him to reach his apparent destination before approaching his vehicle and informing him of his detention "pursuant to" the search warrant. Officers then questioned Whitaker about marijuana on his person, arrested and Mirandized him, then questioned him further, before transporting him back to his home in order to execute the warrant. On these facts, we find the rationale of Summers to be inapplicable.

While we recognize that Summers does not impose upon police an explicit duty based on geographic proximity to the site of the search, it clearly stresses the propriety and reasonableness of police performance in the manner in which they execute the warrant. We find on these facts that the conduct of the police officers does not satisfy the standards of reasonableness required under the Fourth Amendment.

We reiterate that the right to detain the occupant of premises to be searched is a limited one based upon the threefold rationale noted by the Summers Court. On the facts before us, however, there is no issue of preventing flight if incriminating evidence were to be found. Whitaker had left the premises and, until his return, he would have had no way of knowing that a search had been or was being conducted.

Likewise, the right to detain occupants to minimize the risk of harm to the officers from violent residents is inapplicable

-

because the officers believed Whitaker was the sole occupant of the house and there is no evidence in this record that the police suspected the presence of other potentially violent occupants. In our view, Summers permits the limited detention of potentially violent individuals who otherwise have a constitutional right to be free from governmental interference who are on or in the immediate vicinity of the place to be searched and who might, therefore, interfere with the orderly execution of the search warrant.

Finally, the Commonwealth asserts that the presence of two "attack dogs" justifies the off-premises detention of Whitaker. However, we do not read Summers to support this proposition. In furtherance of the goal of an orderly execution of a search warrant, an occupant's help in unlocking doors and containers or, as here, with the restraint of animals on the premises, may be convenient and helpful to the police. We do not believe, however, that this reason is sufficient, standing alone, to justify the detention and involuntary transportation to the scene of a search, an individual who is not named in the search warrant and who is a significant distance from the premises to be searched. Thus, we decline the Commonwealth's invitation to extend Summers to the circumstances of this case.

Furthermore, the remaining cases relied upon by the Commonwealth also do not support an extension of Summers. In Allen, the officers, as in this case, had a search warrant for

-

the home and detained the defendant for purposes of executing the warrant. We held that the defendant's detention was permissible under the doctrine of Summers. See Allen, 3 Va. App. at 662, 353 S.E.2d at 165. However, the defendant in that case was stopped by police in a van traveling along a single-lane driveway leading from the house. See id. at 659-60, 353 S.E.2d at 163-64. The defendant had not yet left the curtilage. In addition, the defendant was aware that the police were about to search his residence and was, thus, a risk to flee or possibly destroy evidence if not detained. Furthermore, the officers had earlier observed occupants of the premises to be in possession of shotguns. See id.

Finally, in Williams, we held that a stop and detention of the defendant, who was stopped after having driven three to four blocks away from his home, was permissible because "the officers who detained [the defendant] clearly possessed sufficient articulable facts to support a reasonable suspicion that [the defendant] was, or had been, engaged in criminal activity." Williams, 4 Va. App. at 65, 354 S.E.2d at 85-86. In short, our holding in Williams was not based upon the holding of Summers. Instead, we held that the detention of Williams was based upon the articulation of reasonable suspicion that Williams was involved in criminal activity. Unlike Williams, here, the Commonwealth has not asserted a claim of reasonable suspicion

-

sufficient to support a Terry stop.  See Terry v. Ohio, 392 U.S. 1, 30 (1968).

Based upon the above, we find the facts of this case insufficient to support the Commonwealth's assertion that Whitaker's detention, over a mile away from his home, was lawful pursuant to the Fourth Amendment and the rationale of Summers, and we reverse the decision of the trial court on this issue.

## IV.  The Interrogation

Whitaker finally argues that the trial court erred in admitting his "statement," contending that all statements made by him were made pursuant to an illegal arrest.  The Commonwealth concedes that Whitaker's first statement, that he had marijuana on his person, should have been excluded. However, the Commonwealth argues that the admission of the statement was harmless error.  The Commonwealth further contends that any statements made after that time, which were made after Whitaker was arrested and Mirandized, were admissible by virtue of the Miranda warnings.  Again, we disagree.

"'Before a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt.'"  Ellis v. Commonwealth, 227 Va. 419, 423, 317 S.E.2d 479, 481 (1984) (quoting Chapman v. California, 386 U.S. 18, 24 (1967)).  On this record, although the Commonwealth claims that Whitaker's initial statement to police was of no consequence and that Whitaker was not charged

-

with possession of marijuana on his person, we cannot determine whether the trial court relied upon the tainted statement in finding Whitaker guilty of the crime charged.  Furthermore,

> [t]he United States Supreme Court has expressly rejected a per se rule that Miranda warnings dissipate the taint of an illegal seizure.  While we agree that the giving of Miranda warnings is a factor which the trial and appellate courts should consider, we must consider the totality of the circumstances surrounding the violation of the suspect's rights.

Watson v. Commonwealth, 19 Va. App. 659, 665, 454 S.E.2d 358, 362 (1995) (citations omitted).  Indeed, "[t]his Court has recognized that evidence which is 'directly linked to the primary taint of the illegal seizure' is not admissible against the person illegally seized."  Id. at 665-66, 454 S.E.2d at 362 (quoting Deer v. Commonwealth, 17 Va. App. 730, 737, 441 S.E.2d 33, 38 (1994)).

Here, for the reasons noted above, when Whitaker was first detained, he was illegally seized.  While illegally seized, Whitaker made an incriminating statement, which led police to find marijuana on his person.  This statement and the marijuana found on his person were the direct result of the illegal seizure and were, therefore, inadmissible.  See Wong Sun v. United States, 371 U.S. 471, 487-88 (1963); see also Davis v. Commonwealth, 35 Va. App. 533, 543, 546 S.E.2d 252, 257 (2001).  The subsequent arrest, which was based directly on the illegally obtained statement and, therefore, indirectly on the illegal

-

seizure, was likewise, illegal.  Furthermore, Whitaker's statements to police following the arrest "flowed one from the other with no discernable break in the chain of causation"; thus, those statements were the proverbial fruit of the poisonous tree and were also inadmissible.  Deer, 17 Va. App. at 737, 441 S.E.2d at 38.

Nevertheless, we note that, although Whitaker's statements and the marijuana found on his person were inadmissible, we have determined that the warrant, and the search pursuant thereto, were valid.  Because we are not in the position of fact finder, we cannot determine whether the contraband found in Whitaker's home would have inevitably been found by police during the execution of the search warrant, despite Whitaker's inadmissible statements directing police to the various locations of the items.  Accordingly, we reverse and remand this matter for further proceedings consistent with this opinion, with direction to the trial court to make this determination on any retrial should the Commonwealth be so advised.

Affirmed in part,
reversed in part and
remanded.