COURT OF APPEALS OF VIRGINIA


Present:   Judges Benton, Humphreys and Senior Judge Coleman
Argued at Chesapeake, Virginia


SHAWN RACHINE MAYE

OPINION BY
v.        Record No. 1831-03-1           JUDGE ROBERT J. HUMPHREYS
NOVEMBER 30, 2004

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF NEWPORT NEWS
Randolph T. West, Judge

Timothy G. Clancy (Moschel & Clancy, P.L.L.C., on brief), for
appellant.

Alice T. Armstrong, Assistant Attorney General (Jerry W. Kilgore,
Attorney General, on brief), for appellee.


Shawn Rachine Maye appeals his convictions, following a bench trial, for possession of a

firearm after having been convicted of a felony (in violation of Code § 18.2-308.2), possession of

a firearm while in possession of a controlled substance (in violation of Code § 18.2-308.4(A)),

and possession of cocaine with intent to distribute (in violation of Code § 18.2-248).  Maye first

contends the trial court erred in finding that police executed a search warrant in compliance with

the "forthwith" requirement of Code § 19.2-56 and that it therefore erred in denying his motion

to suppress the related evidence.  Maye further contends that the trial court erred in finding the

evidence sufficient to establish that he constructively possessed the firearm and the cocaine.  For

the reasons that follow, we affirm Maye's convictions.

I.  Background

In accord with settled principles, we review the evidence on appeal in the light most

favorable to the Commonwealth, as the party prevailing below, granting to it all reasonable

inferences fairly deducible therefrom.  Archer v. Commonwealth, 26 Va. App. 1, 11, 492 S.E.2d

826, 831 (1997) (citation omitted).

So viewed, the evidence presented below established that a "confidential, reliable

informant" advised Detective J.A. Meeks, Jr., of the Newport News Police Department, that

> On May 14, 2001 . . . [the informant] had been to a motel room
> during the last 72 hours where he/she observed a quantity of
> cocaine that was available for sale.  The informant identified the
> motel Room as 149 of the Econo Lodge located at 11845 Jefferson
> Avenue inside the City of Newport News.  This motel room is
> commonly referred to as 11845 Jefferson Avenue, Room 149,
> Newport News, Virginia.  The informant state[d] that while he/she
> was at Room 149, he/she observed a black male known as Shawn
> Maye in possession of a quantity of cocaine that was available for
> sale.  The informant advised . . . that Shawn Maye carries a firearm
> for protection.

Based upon that information, Detective Meeks "identified Shawn Maye as Shawn Rachine

Maye," "described as a black male," "approximately 5'10" tall [weighing] about 180 pounds."

Meeks obtained search warrants for the motel room and Maye's person that same day.

Meeks executed the warrants eleven days later, during the early morning hours of May

25, 2001.  Detectives Torres and Sorrell assisted Meeks during the execution of the warrant.

Detective Sorrell was the first officer to enter the motel room.  Upon entry, he observed

that there were two beds in the room.  Maye was "on the first bed as [he] went into the room, to

[his] right."  George P. Brooks "was on the other bed."  The beds were "set up in the room

parallel to one another."  The "only light in the room" "was a TV that illuminated the room,

which was opposite [a] nightstand" that "separate[d] the two beds."

Upon searching the room, Detective Sorrell located a gun in the nightstand.  The gun was

lying in a lower, open portion of the nightstand, "right next" to "where [Maye] was lying in bed."

Detective Torres located digital scales containing "suspected cocaine residue" in the "side

pocket" of a "black and tan bag."  Detective Torres found the bag on the "right side" of the bed

Maye was lying in. Torres asked Maye if the bag belonged to him. Maye stated that the "bag was his." Detective Meeks searched Maye's person and located "approximately $2200.00 in U.S. currency from his pants pocket[s]."

After the detectives read Maye his Miranda rights, Detective Meeks "asked [Maye] if he had ever possessed the firearm." Maye replied that "he had," but he claimed that the gun belonged to Brooks. Maye stated that he "would occasionally move it" "from one place to the other when he was cleaning up." For that reason, Maye acknowledged that the detectives would find his fingerprints on the gun. Maye also acknowledged "he was not able to possess a firearm because he was a convicted felon."

With regard to the "duffel bag," Maye confirmed that the bag belonged to him. However, when he overheard Detectives Meeks and Torres discussing the apparent "cocaine residue" on the scale, Maye stated "that there was no cocaine on the scale." When the detectives placed Maye under arrest for "possession of cocaine" and "possession of a firearm by [a] convicted felon," Maye was in "disbelief," and stated: "I can't believe you arrested me for cocaine. You didn't find anything." Maye repeated these statements "[s]everal times throughout the night."[1]

Detective Larry W. Taylor, also of the Newport News Police Department, was summoned back to "that room," by the motel manager, later that same morning. When Detective Taylor arrived, he found the door to the room "pulled to, but it wasn't secure." He observed that the room "appeared to have been searched by the Vice-Narcotics Unit," and saw a VCR that had "been knocked over." The VCR had a "loose top." Taylor looked inside the VCR and found "cocaine in a plastic bag."

Maye was subsequently indicted for possession of a firearm after having been convicted of a felony, possession of a firearm while in possession of a controlled substance, and possession

---

[1] The detectives also arrested Brooks.

of cocaine with intent to distribute.  Prior to his trial on these charges, Maye moved to suppress the evidence, contending that:  (1) the "information relied upon in obtaining the search warrant became 'stale' after the warrant was issued but prior to the police executing it," in violation of the Fourth Amendment; and (2) the "search warrant [was not] executed forthwith" as required by Code § 19.2-56.

During the hearing on Maye's motion to suppress, Detective Meeks testified that he "obtained the search warrant[s] May 14, [at] approximately 8:00 p.m."  "On May 15 and May 16" he was on "special assignment, and duty hours for the Vice-Narcotics Squad were switched from 10:00 a.m. to 6:00 p.m. and 2:00 p.m. to 10:00 p.m. respectively" on those days.  May 17 and May 18, a Saturday and Sunday, were days Meeks was "signed off duty."  "[T]hen that following week, 19th, 20th, 21st and 22nd, [Meeks] was on assignment in Oklahoma."  When Meeks returned on May 23, 2001, he and his fellow detectives attempted to "set up the suspect," but Maye was not at the "location of the search warrant."  Accordingly, the detectives returned the following evening, "set up surveillance and waited until [they] confirmed that [Maye] was inside" to execute the warrant.  The detectives, thus, "actually executed [the warrant] in the early morning hours of the 25th[.]"

Meeks further testified that "there were additional times that [the] reliable informant had been to that same location and observed quantities of cocaine for sale."  Specifically, he stated that on or near May 1, 2001, the informant advised that he or she had been at that location and observed the cocaine.  However, because the informant had observed this activity more than 72 hours prior to reporting it to Detective Meeks, Detective Meeks was "unable to obtain a search warrant based on that information at that time."

On cross-examination, Detective Meeks agreed that "all other information with regard to this prior visit to this hotel room with regard to Shawn Maye, so forth, [was] exactly the same,

- 4 -

i.e., it was several weeks prior to May 14th, 2001." He further explained the police department "practice" with regard to search warrants as follows:

> Typically, the detective who obtains a search warrant will be the detective who completes the briefing and executes the search warrant.

Nevertheless, when he left for assignment in Oklahoma, he left the search warrants on his desk "to be executed if work needed to be done or if [other officers] needed something to do."

After hearing argument by the parties, the trial court held:

> I think the delay has been sufficiently explained and it still falls within the reasonable, practical reason for having the delay and it's not an unusual delay and I am going to deny the motion to suppress.

During Maye's subsequent trial, Detective Taylor testified that, prior to being called back to the motel room on May 25, 2001, a "gentleman . . . that worked for the motel and a female maid" "had been in there, had been into the room." He stated that his "understanding was, [the VCR] was knocked off, the drugs had fallen out of it and the drugs were replaced and that's when they called [the police]." Detective Taylor acknowledged that, "[i]n [his] judgment," the door to the motel room was in such a state that it "couldn't be secured." He also acknowledged that no fingerprints were found on the bag of cocaine.

Pursuant to an agreement with the Commonwealth, Brooks testified on behalf of the Commonwealth. Brooks stated that he had been living at the motel with Maye for approximately five months prior to the "incident" and that Maye had "rented" the room. He testified that he had purchased the gun that the detectives found in the room. Specifically, he stated that he and Maye looked for the gun "together," that Maye gave him the money to buy the gun, but that he made the actual purchase because Maye did not have identification and because Brooks knew the "people" at the store. He further testified that he carried the gun, that he kept it in his car "for it

to be visible," and that the gun was in the car when he and Maye would go "out or whatever." He also acknowledged that he had seen Maye "handling" the gun.

With regard to the VCR, Brooks testified that the VCR belonged to Maye and that he had been with Maye when Maye had purchased it, approximately two months prior to the day the search warrants were executed. He acknowledged that he "didn't even know whether [the VCR] was hooked up, really" and stated that he never "showed a movie on it," nor saw Maye "show a movie on it." In response to questioning by the court, Brooks stated that he never sold drugs, but had used drugs himself. He testified that he obtained the drugs he used from Maye.

Maye's counsel subsequently conceded that if the trial court were to find that Maye possessed the drugs found in the VCR, he would not argue "that's not possession with intent to distribute." Certificates of analysis demonstrated that cocaine was found on the digital scale and that the plastic bag contained "155.7 grams" of "Cocaine Hydrochloride."

Subsequent to the close of the Commonwealth's case, Maye's counsel made a motion to strike, which was denied by the trial court. Without presenting evidence, Maye's counsel rested his case and renewed the motion to strike, arguing that the Commonwealth had failed to establish that Maye either actually or constructively possessed the cocaine or the gun. The trial court disagreed, finding:

> First of all, as far as the possession of cocaine in and of itself, I think the evidence is more than sufficient. They found in his duffel bag the scales and with comments that he made, I don't think there's any question about that.
>
> The question as to possession with intent to distribute may be a little more difficult, but when you have, as in this case, a co-defendant who takes the stand – and I believe he told the truth. He simply tried to avoid saying things that would make it a little bit more tight. It's what you call dumb like a fox. He just simply attempted to avoid doing what he had promised to do in exchange for a deal with the Commonwealth taking one of the charges away from him, in fact, when he pled guilty. His testimony was not rebutted in any way, that is, that the VCR was that of Mr. Maye,

that he never saw any drug with the exception of that that mysteriously appeared on the nightstand between them, which he assumed came from Mr. Maye. So I think the connection there is sufficient to find the defendant guilty of the charge of possession with intent to distribute.

As to the firearm, once again, Mr. Brooks testifies that he purchased it because he had a discussion with Mr. Maye that they needed a firearm because Mr. Maye had been robbed at some point. They were living in the hotel at the time he purchased it. They both handled it. It was in open and obvious sight at the time that the police went into the hotel. I believe he testified he never actually saw Mr. Maye move it, but Mr. Maye, by his own admission to the officers, stated that it could well have his fingerprints on it, that he had moved it around from time to time. The Court feels the evidence is sufficient to find the defendant guilty of that charge as well and so finds. All right.

The trial court ultimately sentenced Maye to serve five years in prison on the charge of possession of a firearm, with three years suspended; five years on the charge of possession of a firearm while in possession of a controlled substance; and ten years on the charge of possession of cocaine with intent to distribute, with nine years suspended.

## II. Analysis

Maye raises two contentions on appeal. First, he contends the trial court erred in refusing to grant his motion to suppress because the police failed to execute the search warrants in conformity with the "forthwith" requirement of Code § 19.2-56, and thus violated his Fourth Amendment rights. Second, he argues the trial court erred in finding the evidence sufficient to prove that he constructively possessed either the gun or the cocaine. We disagree.

### A.

"In reviewing a trial court's denial of a motion to suppress, 'the burden is upon [the appellant] to show that the ruling . . . constituted reversible error.'" McGee v. Commonwealth, 25 Va. App. 193, 197, 487 S.E.2d 259, 261 (1997) (en banc) (quoting Fore v. Commonwealth, 220 Va. 1007, 1010, 265 S.E.2d 729, 731 (1980)). We consider the evidence in the light most

favorable to the Commonwealth, as the prevailing party below.  See Commonwealth v. Grimstead, 12 Va. App. 1066, 1067, 407 S.E.2d 47, 48 (1991).  "'In so doing, we must discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences that may be drawn therefrom.'"  Watkins v. Commonwealth, 26 Va. App. 335, 348, 494 S.E.2d 859, 866 (1998) (quoting Cirios v. Commonwealth, 7 Va. App. 292, 295, 373 S.E.2d 164, 165 (1988)).

Further, a defendant's claim that evidence was seized in violation of the Fourth Amendment presents a mixed question of law and fact that we review *de novo* on appeal.  See Ornelas v. United States, 517 U.S. 690, 691 (1996).  Because "the requirements of the Virginia statutes controlling the issuance of search warrants and forbidding searches without a warrant . . . are in substance the same as those contained in the Fourth Amendment," Kirby v. Commonwealth, 209 Va. 806, 808, 167 S.E.2d 411, 412 (1969), in reviewing the trial court's determination of whether the search warrants were executed in a timely manner, we therefore "give deference to the factual findings of the trial court and independently determine whether the manner in which the evidence was obtained meets the requirements of [Code § 19.2-56 and] the Fourth Amendment."  Murphy v. Commonwealth, 264 Va. 568, 573, 570 S.E.2d 836, 838 (2002); see also Turner v. Commonwealth, 14 Va. App. 737, 742, 420 S.E.2d 235, 238 (1992) (noting that Code § 19.2-56 includes "a codification of the constitutional requirement that the search must be conducted while probable cause continues to exist").

Code § 19.2-56 contains two time limitations, a fifteen-day bar and a "forthwith" requirement.  The fifteen-day bar "serves to extinguish absolutely the viability of a search warrant if not executed within fifteen days, regardless of circumstances."  Turner, 14 Va. App. at 740, 420 S.E.2d at 237.  The "forthwith" requirement, on the other hand, "has an independent substantive meaning," id. at 742, 420 S.E.2d at 238, and is intended to "define[]the policy of the

- 8 -

Commonwealth that search warrants be executed as soon as reasonably practical [and] while probable cause continues to exist." Id. at 740, 420 S.E.2d at 237. However, although the language of Code § 19.2-56 does "codify[] the constitutional mandate . . . that probable cause must [] exist at the time a search warrant is executed," id. at 743, 420 S.E.2d at 239, the statute "goes beyond that." Id. at 742, 420 S.E.2d at 238. That is, we have interpreted the "forthwith" provision as requiring something more than a mere showing of the continued existence of probable cause: specifically, that "police officers [] execute[d] the warrant with reasonable dispatch and without undue delay." Id. at 743, 420 S.E.2d at 239.

Here, Officer Meeks clearly executed the search warrants within the fifteen-day period prescribed by Code § 19.2-56. This does not, however, end our inquiry into whether the warrants were executed in a timely manner. As we noted in Turner,

> By establishing a fifteen-day limitation period in Code § 19.2-56,
> the General Assembly did not intend to provide that search
> warrants executed within that time would be conclusively
> presumed to have been executed timely. Such an interpretation
> would render the "forthwith" language of the statute meaningless,
> a result that we cannot attribute to the legislature.

Id. at 742, 420 S.E.2d at 238. Accordingly, the dispositive question here is whether the officers executed the search warrants "forthwith," as required by Code § 19.2-56, and before probable cause had dissipated, as required by both the Virginia statute and the Fourth Amendment.

As we explained in Turner, "forthwith" does not require that a search warrant be executed "immediately or as soon as physically possible." Id. (citing United States v. Wilson, 491 F.2d 724, 725 (6th Cir. 1974)). Similarly, "[i]t does not mandate that officers must immediately execute the search warrant without regard to the circumstances that obtain." Id. Rather, we have interpreted "forthwith" as requiring the execution of search warrants "with reasonable dispatch and without undue delay," in order "'to lessen the possibility that the facts upon which probable cause was initially based do not become dissipated.'" Id. (quoting United

- 9 -

States v. Nepstead, 424 F.2d 269, 271 (9th Cir. 1970)). Ultimately, then, "forthwith" is meant to embody "a practical and flexible standard which must conform to the necessities of circumstances." Id.

Under the circumstances of this case, we find no error in the trial court's determination that Detective Meeks executed the warrant with "reasonable dispatch and without undue delay." Id. Although the ten-day delay between the issuance of the warrant and its first attempted execution is somewhat troublesome, we noted in Turner that one relevant consideration as to whether a warrant was executed "forthwith" is whether there are "other competing law enforcement interests which preclude an immediate execution of the warrant." Id. at 747 n.2, 420 S.E.2d at 241 n.2. Here, Detective Meeks testified that it was standard police department "practice" for a warrant to be executed only in the presence of the officer who obtained the warrant, so that the investigating officer could brief the other officers involved prior to the search.[2] After Detective Meeks obtained the warrants on the evening of May 14, 2001, he was on special assignment on May 15 and 16, he was "signed off duty" on May 17 and May 18, and he was on assignment in Oklahoma on May 19, 20, 21 and 22. Detective Meeks attempted to

---

[2] We note that there is some conflict between Officer Meeks' testimony that it was "standard police practice" for the police officer who obtains a search warrant to be present when the warrant is executed, and his testimony that he left these warrants on his desk while he was in Oklahoma in case any of the other police officers "needed something to do." It certainly makes sense to have the investigating officer present when a search warrant is executed whenever it is practical to do so. Moreover, in the absence of evidence that any of the other police officers actually had an opportunity to execute the warrants, we cannot conclude that the trial court erred in finding that the delay had been "sufficiently explained" by Detective Meeks.

execute the warrant immediately after his return, on May 23, 2001.[3] Detective Meeks'

job-related absences constitute a "competing law enforcement interest" that prevented him from

attempting to execute the warrant until his return from Oklahoma.  We agree with the trial

court's conclusion that the eleven-day delay had been "sufficiently explained" by Detective

Meeks and that the search warrants were therefore executed as soon as reasonably practicable

under the circumstances.

In fact, in the context of a staleness challenge, we specifically have recognized that an

officer's delay in procuring an arrest warrant for a period of "eleven" days, partly because the

officer was handling other cases or had days off, did not invalidate the warrant.  Perez v.

Commonwealth, 25 Va. App. 137, 140, 486 S.E.2d 578, 580 (1997) (noting that, aside from

cases where allegations are that the warrant itself is suspect because the information on which it

rested was too old to present probable cause, "'[c]ases in which staleness becomes an issue

arise'" when "'the facts alleged in the warrant may have been sufficient to establish probable

cause when the warrant was issued, but the government's delay in executing the warrant possibly

---

[3] Because Maye was not present at the motel at that time, the officers did not execute the warrant until the following evening.  We have previously recognized that, where a search warrant is issued for both a premises and its occupant, it may be appropriate to delay the execution of the search warrant on the premises until the occupant is present, but only if probable cause for both searches continues to exist.  See Turner, 14 Va. App. at 747, 420 S.E.2d at 241 (holding that a search warrant was executed "forthwith" despite an eleven-day delay between the issuance of the warrant and its execution where the warrant specified that both a resident and its occupant were to be searched, and the warrant was executed "immediately after learning that the described occupant had returned" to the premises).  Because probable cause for this search had not dissipated when the warrants were executed, see infra, this one-day delay would not – standing alone – render the search untimely.  See id.; see also Whitaker v. Commonwealth, 37 Va. App. 21, 553 S.E.2d 539 (2001) (holding that search warrant was executed "forthwith" despite six-day delay between the warrant's issuance and its execution where the defendant was absent from the premises for the entire six-day period, the warrant was executed immediately after the defendant returned, and the officers had previously been informed that the defendant kept two attack dogs in the house); cf. Commonwealth v. Moss, 14 Va. App. 750, 752, 420 S.E.2d 242, 243 (1992) (holding that a search warrant was executed "forthwith" despite a five-day delay between the issuance of the warrant and its execution where "the reason for the delay was to permit the [] warrant to be executed concurrently with a search warrant for another apartment in the same building").

tainted the search'" (quoting United States v. McCall, 740 F.2d 1331, 1336 (4th Cir. 1984))). As set forth above, there is no evidence here that the detective's delay in executing the warrant resulted from anything other than "competing law enforcement interests" and/or reasonable police investigative practices. Further, there is no evidence that the delay potentially tainted the search.

However, the question of whether the police complied with the requirements of Code § 19.2-56 and the Fourth Amendment also requires a determination of whether probable cause continued to exist at the time the warrant was executed. See Turner, 14 Va. App. at 740, 420 S.E.2d at 237 ("[T]he question whether the police officers complied with the 'forthwith' requirement necessarily entails a determination whether probable cause continued to exist at the time the warrant was executed . . . ."). Under the circumstances of this case, there is no evidence that probable cause had dissipated by the time the warrants were executed.

"'[A] warrant based on a known presence of contraband at the premises rests . . . on the expectation that the contraband will remain there until the warrant is executed.'" Id. at 745, 420 S.E.2d at 240 (quoting United States v. Garcia, 882 F.2d 699, 702 (2d Cir. 1989) (citing Wayne R. LaFave, Search and Seizure 701 (1978))).

> When delay occurs between the issuance and execution of a search warrant, whether probable cause to search continues to exist at the time the warrant is executed depends on "the facts and circumstances of the case, including the nature of the unlawful activity alleged, the length of the activity and the nature of the property to be seized."

Id. (quoting McCall, 740 F.2d at 1336).

> "Probable cause, as the very name implies, deals with probabilities. These are not technical; they are factual and practical considerations in every day life on which reasonable and prudent men, not legal technicians, act." Derr v. Commonwealth, 242 Va. 413, 421, 410 S.E.2d 662, 666 (1991) (quoting Saunders v. Commonwealth, 218 Va. 294, 300, 237 S.E.2d 150, 155 (1977)). Probable cause exists where the totality of the circumstances set

- 12 -

forth in the affidavit supports a common sense decision by the magistrate that "there is a fair probability that contraband or evidence of a crime will be found in a particular place." Illinois v. Gates, 462 U.S. 213, 238 (1983). "[P]robable cause is a fluid concept — turning on the assessment of probabilities in particular factual contexts — not readily, or even usefully, reduced to a neat set of legal rules." Id. at 232. Because it is a fluid concept based on probabilities, the continued existence of probable cause at a particular time is dependent upon the circumstances. So long as probable cause continues to exist, the search will be valid. See [United States v. Bedford, 519 F.2d 650, 655 (3d Cir. 1975)].

Id. at 744, 420 S.E.2d at 239.

Here, the warrants for the motel room and Maye's person were issued based upon probable cause to believe that "a quantity of cocaine that was available for sale" would be found at Maye's motel room. "The delay of eleven days between issuing the warrant and the search, standing alone, did not vitiate the reasonable belief that contraband would be on the premises and in the possession of" Maye, "the described occupant." Id. at 746, 420 S.E.2d at 240. The nature of the activity in which the informant observed Maye engage would lead one reasonably to believe that the room was used exclusively for the distribution of contraband and that evidence of such activity would still be located in the motel room when the officers conducted the search. Indeed, the drugs were described as a "quantity" significant enough for "sale." Further, approximately two weeks before the issuance of the warrant, the informant advised Detective Meeks that he/she had been "to that same location and observed quantities of cocaine for sale" on a prior occasion. These facts reasonably suggest a continuing enterprise. In fact, we have explicitly held that "[t]he selling of drugs, by its nature, is an ongoing activity." Id.

Consequently, the police officers could have reasonably concluded that the contraband remained at the motel after the informant left and remained there until the warrant was executed. Moreover, as set forth above, "[i]t is not necessary that the facts support this conclusion beyond a

- 13 -

reasonable doubt but only that they support the probability of the conclusion." Huff v. Commonwealth, 213 Va. 710, 717, 194 S.E.2d 690, 696 (1973).

Accordingly, we hold that under the circumstances of this case, Detective Meeks, by waiting eleven days to execute the warrant, did not violate either the "forthwith" provision of the Virginia statute or the Fourth Amendment. As the trial court ultimately determined, the facts supported the reasonable inference that the drugs could still be found at the motel and/or on Maye's person, as well as the reasonable inference that Detective Meeks executed the warrant as soon as reasonably practicable under the circumstances.[4]

B.

"When the sufficiency of the evidence in a criminal case is challenged on appeal, we must view the evidence and all reasonable inferences fairly deducible therefrom in the light most favorable to the Commonwealth." Walton v. Commonwealth, 255 Va. 422, 425-26, 497 S.E.2d 869, 871 (1988) (citing Dukes v. Commonwealth, 227 Va. 119, 122, 313 S.E.2d 382, 383 (1984)). "Great deference must be given to the factfinder who, having seen and heard the witnesses, assesses their credibility and weighs their testimony." Id. at 426, 497 S.E.2d at 871 (citing Saunders v. Commonwealth, 242 Va. 107, 113, 406 S.E.2d 39, 42 (1991)). Thus, a trial court's judgment will not be disturbed on appeal "unless it is plainly wrong or without evidence to support it." Id. (citing Code § 8.01-680; Dukes, 227 Va. at 122, 313 S.E.2d at 383).

In order to convict a person of illegal possession of contraband, "proof of actual possession is not required; proof of constructive possession will suffice." Id. "Constructive possession may be established when there are 'acts, statements, or conduct of the accused or other facts or circumstances which tend to show that the [accused] was aware of both the

---

[4] As in Turner, "[b]ecause we hold that the officers complied with . . . Code § 19.2-56 and with the constitutional continuing probable cause requirement," we do not address the issue of "whether a statutory violation, without a constitutional one, requires suppression of the evidence obtained as a result of the violation." Turner, 14 Va. App. 748 n.3, 420 S.E.2d 242 n.3.

presence and character of the substance and that it was subject to his dominion and control.'" Id. (quoting Drew v. Commonwealth, 230 Va. 471, 473, 338 S.E.2d 844, 845 (1986) (internal quotations omitted)). "Circumstantial evidence may be sufficient to prove possession, as long as it excludes all reasonable hypotheses of innocence flowing from the evidence." Wells v. Commonwealth, 32 Va. App. 775, 781, 531 S.E.2d 16, 19 (2000). Nevertheless, the "issue upon appellate review is not whether 'there is some evidence to support' these hypotheses" of innocence. Commonwealth v. Hudson, 265 Va. 505, 513, 578 S.E.2d 781, 785 (2003). "The issue is whether a reasonable [fact finder], upon consideration of all the evidence, could have rejected" the defendant's theories of innocence and found him or her guilty of the charged offenses beyond a reasonable doubt. Id.

So viewed, we note that

> [a]n accused's mere proximity to an illicit drug . . . is not sufficient to prove possession. [Drew, 230 Va. at 473, 338 S.E.2d at 845]. In addition, ownership or occupancy of the premises where the drug is found does not create a presumption of possession. Code § 18.2-250.1(A); Garland v. Commonwealth, 225 Va. 182, 184, 300 S.E.2d 783, 784 (1983). Nonetheless, these factors may be considered in deciding whether an accused possessed the drug. Lane v. Commonwealth, 223 Va. 713, 716, 292 S.E.2d 358, 360 (1982).

Walton, 255 Va. at 426, 497 S.E.2d at 872. Moreover, as stated above, "[p]ossession need not be actual, exclusive, or lengthy in order to support a conviction." Wells, 32 Va. App. at 781, 531 S.E.2d at 19. Rather, the statutes criminalize constructive *or joint possession* of contraband "*of any duration*." Id. (emphasis added); see also Archer v. Commonwealth, 225 Va. 416, 418, 303 S.E.2d 863, 863-64 (1983).

As it pertained to the firearm, the evidence here clearly proved, as the trial court found, that Maye and Brooks bought the gun together and that Maye handled the gun on occasion. Further, the gun was found within Maye's reach, as well as within open and obvious view of

- 15 -

both Maye and Brooks. Accordingly, we find no error in the trial court's conclusion that the evidence supported Maye's conviction for possession of a firearm.

As to the cocaine, while we recognize that the motel door was not "secure" when the officer returned and found the drugs inside the VCR, we must also recognize that: (1) the officers found cocaine on the digital scales in the duffel bag that Maye admitted belonged to him; (2) Brooks testified that the VCR belonged to Maye and that he did not know if the VCR was ever "hooked up"; (3) Brooks testified that Maye provided him with cocaine; (4) Maye possessed a large quantity of cash when searched by the officers; (5) the informant identified Maye to Detective Meeks as the person related to the cocaine he or she had observed for sale in that particular motel room; and (6) Maye made several suspicious statements to the officers, claiming that there was no "cocaine" on the digital scales and that he should not be arrested because the officers initially failed to "find anything." Based upon the totality of this evidence, we find that a reasonable fact finder could have rejected Maye's claims that the drugs did not belong to him and could have found that the evidence supported his conviction in this regard beyond a reasonable doubt.

For the reasons stated above, we affirm Maye's convictions.

Affirmed.

Benton, J., concurring.

I disagree with the majority opinion's conclusion that the evidence in this case satisfied the "forthwith" requirement of Code § 19.2-56.

Code § 19.2-56 contains two time limitations for search warrants: "that the place be forthwith searched" and that the warrant shall be voided if "not executed within fifteen days after insurance." As we held in Turner v. Commonwealth, 14 Va. App. 737, 420 S.E.2d 235 (1992), the statutory requirement of "'forthwith' . . . has an independent substantive meaning" and "defines the policy of the state that search warrants, which are the foremost safeguard to protect against unreasonable searches proscribed by the Fourth Amendment, are to be executed with reasonable dispatch." Id. at 742, 420 S.E.2d at 238. Thus, the statute's use of the word "forthwith" obviously requires "a reasonable promptness, diligence or dispatch in executing a warrant, considering the difficulties actually encountered in attempting to perform the task." United States v. Bradley, 428 F.2d 1013, 1016 (5th Cir. 1970). It does not countenance the execution of the warrant at the leisure of the police or when deliberately delayed by the police for their own purposes. Id. By construing the statute to require the warrant's execution with "reasonable dispatch and without undue delay," we have held that "Code § 19.2-56 accords police officers a limited amount of flexibility in deciding when to execute search warrants." Turner, 14 Va. App. at 743, 420 S.E.2d at 239.

The evidence in the record does not suggest that the delay in this case was "unavoidable, necessary, or even desirable." Id. The warrant was issued on May 14, 2001 and not executed until eleven days later, on May 25, 2001. The execution of the warrant was delayed merely because the officer who obtained the warrant was engaged in other tasks. The police department had no policy, written or otherwise, that required the warrant to be executed by the officer who obtained the warrant from the magistrate. The officer who obtained the warrant testified "that is

- 17 -

basically the practice [he] found [when he was assigned to] Vice-Narcotics." He also testified that this procedure "typically" allows the officer who obtained the search warrant to be the one who "completes the briefing and executes the search warrant."

This informal practice of the vice-narcotics officers is nothing more than a convenience to the officers. Indeed, the officer testified that he left "the search warrant on [his] desk" for four days to be executed by other officers "if work needed to be done or if [the other officers] needed something to do." He also testified that on the night he went to execute the warrant neither he nor any other officer "brief[ed] the problem out beforehand in its actual formal proceeding in preparation of executing the search warrant." The record further establishes that another officer, who did not obtain the warrant from the magistrate, signed the warrant as the "executing officer." In other words, the record discloses that the convenience of the officers was in actuality the principle that governed executing the warrant. Furthermore, nothing in this record establishes that this informal practice has any rational relationship to the search or to good police practice or that this informal practice "makes sense" for any law enforcement objective. Indeed, as this record establishes, the convenience of this informal practice was subject, in fact, to being disregarded if the other officers needed "something to do." For these reasons, I would hold that the evidence in this record failed to establish that the search warrants were "executed with reasonable dispatch." Turner, 14 Va. App. at 742, 420 S.E.2d at 238.

Oddly, we observed in Turner that the "forthwith" language in Code § 19.2-56 is merely "directory." 14 Va. App. at 740, 747, 748 n.3, 420 S.E.2d at 237, 241, 242 n.3. It bears noting, however, that despite Turner's use of the words "directory" and "directive" in describing the forthwith requirement, Turner's analysis leaves no doubt that the term "forthwith" is a mandatory, not directory requirement. Id. at 740, 741, 747, 420 S.E.2d at 239, 241, 243. As Turner holds, Code § 19.2-56 reveals the legislature intended "forthwith" to have a meaning

independent of the fifteen-day period.  Id. at 742, 420 S.E.2d at 238.  The opinion also holds that the meaning of forthwith is not only "independent," but "substantive" as well.  Id.  Moreover, compliance in executing the warrant within the fifteen-day period is mandatory, and a failure to comply results in an invalid warrant.  Id.  If we were to read Turner as deeming "forthwith" to be directory, its holding would be incongruous because in one place it would mean one statutory requirement confers substantive rights, and the other not.  Turner expressly holds that "[t]he 'forthwith' requirement has an independent substantive meaning."  Id.

In addition, the opinions from each jurisdiction that we found persuasive in Turner interpreted "forthwith" in favor of it conferring substantive rights when the procedure was not followed.  Thus, we adopted the interpretation in which any delay in executing the warrant required the government to prove that the delay was "reasonable."  Id. at 742-43, 420 S.E.2d at 238-39.  We held that a reviewing court must then examine justification for and length of the delay to decide the issue of reasonableness.

Suppression seems clearly to be the remedy when the delay is unreasonable because Code § 19.2-56's forthwith requirement goes to the essence of the statute -- it involves the public's right to be free from unreasonable searches and seizures.  We have noted, however, that "our Supreme Court has steadfastly refused to extend that rule to encompass evidence seized pursuant to statutory violations, absent an express statutory provision for suppression." Troncoso v. Commonwealth, 12 Va. App. 942, 944, 407 S.E.2d 349, 350 (1991); see also Horne v. Commonwealth, 230 Va. 512, 518-19, 339 S.E.2d 186, 191 (1986) (holding that "failure to bring the accused forthwith before a judicial officer" did not require suppression).

For these reasons, I concur in the judgment.