COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:   Judges AtLee, Chaney and Lorish
Argued at Lexington, Virginia


SHAWN MATTHEW KEARNS

                                                    MEMORANDUM OPINION* BY
v.        Record No. 1823-23-3              JUDGE RICHARD Y. ATLEE, JR.
                                                    APRIL 8, 2025

COMMONWEALTH OF VIRGINIA


                FROM THE CIRCUIT COURT OF THE CITY OF LYNCHBURG
                            J. Frederick Watson, Judge

            Joseph A. Sanzone (Sanzone & Baker, L.L.P., on brief), for
            appellant.

            Sheri H. Kelly, Assistant Attorney General (Jason S. Miyares,
            Attorney General, on brief), for appellee.


        A jury convicted Shawn Matthew Kearns of 1 count of possessing child pornography and

92 counts of possessing child pornography, second or subsequent offense.  The trial court

sentenced Kearns to 93 years with all but 11 years suspended.  On appeal, Kearns argues that the

evidence was insufficient to prove that he knowingly possessed child pornography and that the

trial court erred in admitting a sample of the images and videos of child pornography into

evidence.  For the following reasons, we affirm his convictions.

                                    I. BACKGROUND

        "On appeal, we review the evidence in the 'light most favorable' to the Commonwealth."

*Clanton v. Commonwealth*, 53 Va. App. 561, 564 (2009) (en banc) (quoting *Commonwealth v.*

*Hudson*, 265 Va. 505, 514 (2003)).  That principle requires us to "discard the evidence of the

accused in conflict with that of the Commonwealth, and regard as true all the credible evidence

_____

        * This opinion is not designated for publication.  *See* Code § 17.1-413(A).

favorable to the Commonwealth and all fair inferences that may be drawn therefrom." *Kelly v. Commonwealth*, 41 Va. App. 250, 254 (2003) (en banc) (quoting *Watkins v. Commonwealth*, 26 Va. App. 335, 348 (1998)).

In 2016, Rodney Brisintine of the Bedford County Sheriff's Office was a member of the Southern Virginia Internet Crimes Against Children Task Force. In that role, Brisintine investigated online sharing of sexually explicit materials involving children. Brisintine used programs called Shareaza LE and ICAT Cops to monitor and identify users on the internet involved in sharing or downloading child pornography.

In July 2016, Brisintine used Shareaza LE to view a file that was shared by a specific computer user through peer-to-peer ("P2P") computer software. The file contained several videos that depicted sexual acts involving children. Brisintine identified the user's internet protocol ("IP") address and subpoenaed documents from the internet service provider. Brisintine forwarded his findings to the Lynchburg Police Department, who traced the IP address to Kearns's home in Lynchburg.

On August 17, 2016, at 6:22 a.m., Detective Kevin Poindexter of the Lynchburg Police Department, along with several other officers, executed a search warrant of Kearns's home. Kearns answered the door and told officers that his wife, Jennifer Kearns, was sleeping upstairs and that no one else lived in the home. Kearns's voice was shaky, and he was visibly shaking when the officers explained the search warrant. He told officers he had been awake until around 4:00 a.m. and had recently fallen asleep. Kearns mentioned that he and Jennifer slept in separate rooms and that he often slept in the basement. Kearns denied knowledge of any child pornography and stated that he shared his internet with friends and neighbors. Kearns advised the officers that he had a laptop at work, two cellphones, and a desktop computer located upstairs in his home. The officers seized 18 items in total, including an Acer laptop from the basement of

the home that Kearns failed to disclose. When confronted with the Acer laptop, Kearns stated he "had completely forgotten that there was a computer downstairs" but acknowledged it was his. Kearns indicated that he used the Ares and Shareaza P2P programs for his "deejay business" but that he had not accessed the programs in about five years. Kearns also disclosed that he had a fake Facebook profile and additional email addresses.

The officers determined that the Kearns's internet signal did not reach across the parking lot from their home to allow access from outside the home as Kearns claimed. They also checked the wireless network at Kearns's residence, and the only devices using the network were those located inside Kearns's home.

Before Kearns's jury trial, he stipulated that 93 images and videos found on the computer were child pornography and were "highly relevant," but he asked that they not be shown to the jury because of their disturbing nature. The trial court allowed the Commonwealth to show a sample of representative images and videos rather than all of them.

Detective Poindexter was qualified as an expert in digital forensics. He testified that he conducted a forensic examination of the Acer laptop and found images, videos, and keyword searches related to child pornography. The laptop contained a user account named "Backup" and required a password. Poindexter generated several records from that "Backup" account. He determined that the final login to the laptop was on August 16, 2016, at 9:36 p.m. and the final logout was on August 17, 2016, at 4:44 a.m. Poindexter testified that login was "interactive," meaning that the user physically entered the password into the laptop. There were no remote or foreign logins on the laptop.

The laptop had the Ares and Shareaza P2P software installed. Poindexter testified that P2P software facilitates file sharing between users of that specific software. He identified the most recent software update for each program and confirmed they were the current versions.

The Ares software was updated on January 24, 2015, and the Shareaza software was updated on July 2, 2016.

Poindexter generated a list of 55 downloaded files from the Ares software that depicted child pornography. The titles included terms like "PTHC" and "OPVA." Poindexter testified that "PTHC" is an acronym for "Preteen Hardcore" and "OPVA" is the "Onion Pedo Video Archive." The records indicated that the earliest download on the Ares software was December 17, 2014, and the latest was May 29, 2016. Poindexter also generated a list of 11 attempted downloads from the Ares software. The search terms included "Hussyfan" and "Molly Fuck," which Poindexter explained are terms consistent with child pornography. The Shareaza software showed a search on August 10, 2016, at 1:21 a.m. for "PTHC."

Poindexter testified that there were also link ("LNK") files on the computer related to child pornography. He explained that LNK files are a "shortcut" function on a computer and serve as a link to the actual file location on the computer. The record indicated that the earliest LNK file was created on January 24, 2015, and the latest on August 17, 2016, at 4:22 a.m. and was titled "PTHC 14 Year Old Masha Blow Job, Anal, Come in Mouth." Poindexter located two other LNK video files created on August 16, 2016, at 11:01 p.m. and August 17, 2016, at 3:56 a.m.

Poindexter testified that a disk clean-up program had been run on the laptop 31 times and determined the most recent was run on August 17, 2016, at 4:40 a.m. He explained that a disk clean-up allows a user to delete all their downloads.

In total, Poindexter collected 93 images and videos of child pornography from the laptop. The Commonwealth showed seven videos and one image to the jury. Poindexter testified that the images and videos were in both allocated and unallocated space on the laptop. He explained that allocated space is where the files and folders are organized in a computer, and unallocated

- 4 -

space is free space on the disk. Poindexter elaborated that when files are deleted, they move from allocated space into unallocated space, and are no longer searchable or accessible without other technical skills or forensic software. He also testified that a person using the same Wi-Fi or wireless access network would not be able to put the files onto the laptop and that because there was no remote access, the user needed to have physical access to the computer to download the child pornography onto it.

At the close of the Commonwealth's case, Kearns moved to strike the evidence. He argued that the evidence was insufficient to show actual or constructive possession of child pornography and insufficient to show he possessed the items in the unallocated space of the laptop because they were not readily accessible to the user and required special forensic software to recover them. The trial court denied his motion.

Kearns presented evidence in his defense. His daughter, Peyton Hensley, testified that she moved from South Carolina in 2015 to live with Kearns and Jennifer. Her then boyfriend, Gregory Hlavac, moved with Hensley, and they lived in the Kearns's basement. Both Hensley and Hlavac had keys to the Kearns's home and used a separate entrance in the basement to come and go. Kearns's mother-in-law, Judy Seigla, gave Hensley the Acer laptop in 2015 to use for school. Seigla testified that she reset the computer to its factory settings before she gave it to Hensley. In January or February of 2016, Hensley and Hlavac moved back to South Carolina. Hensley left the laptop at the Kearns's home when they moved out. She and Hlavac kept their keys to the home.

Hensley testified that on one occasion, she caught Hlavac watching pornography on the laptop at the Kearns's house and was furious. Hensley also stated that when she received a call from Kearns about his arrest, she did not know of Hlavac's whereabouts. Poindexter testified

that he spoke with Hlavac and determined Hlavac had not been at the Kearns's home since May 2016.

Jennifer testified that Kearns slept in the bed with her on the night of August 16, 2016, and never left the bedroom. She also stated they would not be able to hear sounds coming from the basement in their bedroom. Jennifer testified that Hlavac was a "strange individual" and that she was not comfortable around him. Jennifer confirmed that Hlavac had not returned their house key and stated she told the police to investigate him and other prior houseguests.

Kearns denied using the laptop to view and download child pornography. He testified that he "did not get a lot of sleep" on the night of August 16, 2016, but that he went to bed around 12:00 a.m. and denied telling the officers he went to bed around 4:00 a.m. Kearns stated he "hardly ever went down to [the] basement" and had not gone down there since May 2016. Kearns denied telling Poindexter that he slept in the basement, and he stated he always slept with Jennifer. He stated that he advised officers of other people who had stayed in the home, including Hlavac.

At the conclusion of all the evidence, Kearns renewed his motion to strike. He argued there was no evidence to prove actual or constructive possession of the child pornography and that he could not have possessed the items found in the unallocated space that were inaccessible without a forensic tool to retrieve them. Kearns suggested that Hlavac was responsible for downloading the child pornography found on the laptop. The trial court denied the motion. The jury found Kearns guilty of 1 count of possessing child pornography and 92 counts of possessing child pornography, second or subsequent offense. Kearns filed a motion to set aside the verdict, and the trial court denied it at sentencing. This appeal followed.

## II. ANALYSIS

### A. *Possession of child pornography*

Kearns argues the evidence was insufficient to prove that he possessed child pornography because there was no evidence connecting him as a user of the laptop. Kearns also argues that the evidence was insufficient to prove he possessed the images and videos in the unallocated space of the laptop because they were only accessible using special forensic software.

#### 1. Standard of review

"When reviewing the sufficiency of the evidence, '[t]he judgment of the trial court is presumed correct and will not be disturbed unless it is plainly wrong or without evidence to support it.'" *McGowan v. Commonwealth*, 72 Va. App. 513, 521 (2020) (alteration in original) (quoting *Smith v. Commonwealth*, 296 Va. 450, 460 (2018)). "[T]he relevant question is whether '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Vasquez v. Commonwealth*, 291 Va. 232, 248 (2016) (quoting *Williams v. Commonwealth*, 278 Va. 190, 193 (2009)).

#### 2. The evidence was sufficient to prove that Kearns knowingly possessed child pornography.

"Any person who knowingly possesses child pornography is guilty of a Class 6 felony" and "[a]ny person who commits a second or subsequent violation of subsection A is guilty of a Class 5 felony." Code § 18.2-374.1:1(A), (B).

"In order to convict a person of illegal possession of contraband, 'proof of actual possession is not required; proof of constructive possession will suffice.'" *Kromer v. Commonwealth*, 45 Va. App. 812, 819 (2005) (quoting *Maye v. Commonwealth*, 44 Va. App. 463, 483 (2004)).

> To support a conviction based upon constructive possession, "the Commonwealth must point to evidence of acts, statements, or conduct of the accused or other facts or circumstances which tend

to show that the defendant was aware of both the presence and character of the [contraband] and that it was subject to his dominion and control."

*Id.* (alteration in original) (quoting *Drew v. Commonwealth*, 230 Va. 471, 473 (1986)). "Ownership or occupancy of the premises on which the contraband was found is a circumstance probative of possession." *Id.*

"It is firmly established that '[c]ircumstantial evidence is competent and is entitled to as much weight as direct evidence provided that the circumstantial evidence is sufficiently convincing to exclude every reasonable hypothesis except that of guilt.'" *Kelley v. Commonwealth*, 69 Va. App. 617, 629 (2019) (alteration in original) (quoting *Pijor v. Commonwealth*, 294 Va. 502, 512 (2017)). "'The Commonwealth is not required to prove that there is no possibility that someone else may have planted, discarded, abandoned or placed the [contraband]' where the contraband is discovered." *Kromer*, 45 Va. App. at 819 (alteration in original) (quoting *Brown v. Commonwealth*, 15 Va. App. 1, 10 (1992) (en banc)). "To resolve the issue, the Court must consider the totality of the circumstances established by the evidence." *Id.* (quoting *Williams v. Commonwealth*, 42 Va. App. 723, 735 (2004)).

The Acer laptop was in the basement of Kearns's home where he lived alone with his wife. When the police arrived with the search warrant on the morning of August 17, 2016, Kearns told the officers that he was up until around 4:00 a.m. and that he often slept in the basement where the laptop was found. The laptop was in use from August 16, 2016, at 9:36 p.m., until August 17, 2016, at 4:44 a.m., when Kearns was present in the home and around the time he went to bed. Child pornography was viewed and downloaded onto the laptop just hours before the officers executed the search warrant. The officers found the pornography stored within the P2P sharing software that Kearns stated he used and, even though he claimed to have not accessed them in five years, they were both updated in 2015 and 2016.

Further, Kearns's behavior was telling. He was visibly shaking when speaking with the officers. He falsely claimed that other neighbors and friends had access to his internet. Further, when asked about his electronic devices, Kearns failed to mention the Acer laptop in the basement, stating he had "completely forgotten" about it. Conveniently, the Acer laptop was the only device in the house containing child pornography.

Kearns claims there was a reasonable hypothesis of innocence that Hlavac was responsible for downloading child pornography on the laptop. But "[t]he Commonwealth need exclude only reasonable hypotheses of innocence that 'flow from the evidence itself, and not from the imagination' of the defendant." *Kelley*, 69 Va. App. at 629 (quoting *Pijor*, 294 Va. at 512). "Merely because defendant's theory of the case differs from that taken by the Commonwealth does not mean that every reasonable hypothesis consistent with his innocence has not been excluded." *Haskins v. Commonwealth*, 44 Va. App. 1, 9 (2004) (quoting *Miles v. Commonwealth*, 205 Va. 462, 467 (1964)). "Whether an alternate hypothesis of innocence is reasonable is a question of fact and, therefore, is binding on appeal unless plainly wrong." *Emerson v. Commonwealth*, 43 Va. App. 263, 277 (2004) (quoting *Archer v. Commonwealth*, 26 Va. App. 1, 12-13 (1997)). To the extent that Kearns's testimony differed from the Commonwealth's, "[t]he factfinder need not believe an accused's explanation and, if that explanation is not believed, may infer that the accused is lying to conceal his guilt." *Abdo v. Commonwealth*, 64 Va. App. 468, 479 n.5 (2015) (quoting *Phan v. Commonwealth*, 258 Va. 506, 511 (1999)).

The record indicated that while Hlavac had been observed watching pornography on the laptop, there was no indication that it was not legal adult pornography. The evidence also showed that Hlavac had moved back to South Carolina with Hensley in January or February of 2016, and last visited in May of 2016. Hensley left the laptop at Kearns's house when they

moved and there was no remote access into the laptop at any point. The jury was permitted to reject Kearns's hypothesis of innocence where it was inconsistent with other evidence at trial. Moreover, the totality of the evidence was sufficient to prove that Kearns was aware of and in control of the child pornography found on the laptop.

3. The evidence was sufficient to prove that Kearns knowingly possessed the images and videos in the unallocated space of the laptop.

Kearns argues that the evidence of possession was insufficient because "without other indicia of knowledge, dominion or control, the mere presence of [illegal] contraband in the unallocated space of the computer cannot be shown to be in the accused's possession because the material in the unallocated space cannot be accessed or seen without the forensic software." *Kobman v. Commonwealth*, 65 Va. App. 304, 307 (2015). Kearns therefore argues that the evidence was insufficient to prove he possessed the images in the unallocated space of the laptop because he lacked the forensic software to access them. We disagree. A rational trier of fact could have found that although Kearns lacked the special software to access the images and videos in the unallocated space of the laptop, there was sufficient "other indicia" that he had knowledge of and dominion and control over the files on August 17, 2016.

Poindexter testified that the disk cleaner was run 31 times on the laptop, and the most recent was on August 17 at 4:40 a.m., just hours before the police executed the search warrant. He explained that the disk cleaner allows the user to delete their downloaded files, thereby moving them from allocated space into the unallocated space of the computer. The files were found in the P2P software that Kearns installed and used. The records showed numerous child pornography search terms that a user typed into the P2P software. There was no remote access to the laptop. And several videos and images were accessed and deleted within hours of the execution of the search warrant, when Kearns and Jennifer were alone in the home.

A reasonable inference may be drawn from this evidence that Kearns was the sole person who had used the computer during the times child pornography was viewed and downloaded on it and that he was the person who was deleting the files and therefore moving files from allocated to unallocated space. A rational trier of fact could have concluded that Kearns purposefully searched for and downloaded the images and videos, and thus knew of their character and presence on the laptop. In addition, the finder of fact could conclude that the images were subject to Kearns's dominion and control from their downloaded dates until he acted to delete them, thereby moving them into the unallocated space of the computer. Thus, the evidence was sufficient to prove that Kearns knowingly possessed the images in the unallocated space.

B. *Admission of child pornographic images and videos into evidence*

Kearns argues that the trial court erred in allowing photographs and videos into evidence when Kearns had stipulated that such material was child pornography. He contends that the probative value of the images was outweighed by their unduly prejudicial effect. The Commonwealth argues that Kearns waived his argument because he did not object to the admission of the material at trial, just to showing the images and videos to the jury. Assuming without deciding that Kearns preserved his argument for appellate review, we find that the trial court did not err by admitting the images and videos into evidence and allowing the Commonwealth to show the jury a representative sample of such material.

1. Standard of review

Determining the "'admissibility of evidence is within the discretion of the trial court,' and an appellate court will not reject such decision absent an 'abuse of discretion.'" *Williams v. Commonwealth*, 71 Va. App. 462, 487 (2020) (quoting *Tirado v. Commonwealth*, 296 Va. 15, 26 (2018)). "[T]he abuse of discretion standard requires a reviewing court to show enough deference to a primary decisionmaker's judgment that the [reviewing] court does not reverse

merely because it would have come to a different result in the first instance." *Commonwealth v. Thomas*, 73 Va. App. 121, 127 (2021) (alterations in original) (quoting *Lawlor v. Commonwealth*, 285 Va. 187, 212 (2013)).

2. The trial court did not abuse its discretion in admitting the images.

"Relevant evidence may be excluded if: (a) the probative value of the evidence is substantially outweighed by (i) the danger of unfair prejudice, or (ii) its likelihood of confusing or misleading the trier of fact; or (b) the evidence is needlessly cumulative." Va. R. Evid. 2:403.

Kearns stipulated and agreed that the 93 images and videos depicted child pornography and were highly relevant to the case. But "[t]he Commonwealth . . . is entitled to prove its case by evidence that is relevant, competent and material." *Boone v. Commonwealth*, 285 Va. 597, 600 (2013) (alterations in original) (quoting *Pittman v. Commonwealth*, 17 Va. App. 33, 35 (1993)). "[A]n accused cannot . . . require the Commonwealth to pick and choose among its proofs, to elect which to present and which to forego." *Id.* (alterations in original) (quoting *Pittman*, 17 Va. App. at 35). Even though it was not required to limit its proof of the charged offenses, the Commonwealth showed the jury only a representative sample of 8 videos and images of the 93. Thus, any risk of unfair prejudice to Kearns was limited by the representative sample, and the court did not abuse its discretion.

III. CONCLUSION

For the foregoing reasons, we affirm the trial court's judgment.

*Affirmed.*